ABRAHAM S. ROSENTHAL et al., Respondents, *v.* LEVI C. WEIR, as President of ADAMS EXPRESS COMPANY, Appellant.

COMMON CARRIER — WHEN LIABILITY OF EXPRESS COMPANY FOR NEG-LIGENCE IN FAILING TO STOP GOODS IN TRANSITU IS NOT LIMITED BY ITS SHIPPING RECEIPT. An action against a common carrier to recover damages for its negligence in delivering goods after a proper and timely notice from the shipper to stop them *in transitu,* which it agreed to do, is founded upon the tortious act of defendant, not upon the contract of carriage under which the goods had been shipped, which must be regarded as having ended upon the receipt of the notice and the possession of the goods as having revested in the shipper, the defendant holding them as bailee; and, therefore, a limitation in the contract of carriage of defendant's liability for loss to an amount specified therein will not preclude a recovery to the extent of the value of the goods.

*Rosenthal* v. *Weir,* 54 App. Div. 275, affirmed.

(Argued January 27, 1902; decided March 4, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 23, 1900, affirming a judgment in favor of plaintiffs entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Carl A. de Gersdorff* and *R. R. Rogers* for appellant. The limit of responsibility undertaken by the defendant as a carrier of the goods in question is defined by the bill of lading, under which in no event could plaintiffs recover in excess of fifty dollars, the agreed value of the goods. (*Belger* v. *Dinsmore*, 51 N. Y. 166 ; *Kirkland* v. *Dinsmore*, 62 N. Y. 171 ; *Magnin* v. *Dinsmore*, 62 N. Y. 35 ; 70 N. Y. 410 ; *Zimmer* v. *N. Y. C. & H. R. R. R. Co.*, 137 N. Y. 460 ; *Rathbone* v. *N. Y. C. & H. R. R. R. Co.*, 140 N. Y. 48 ; *Hart* v. *P. R. R. Co.*, 112 U. S. 331 ; *Steers* v. *Steamship Co.*, 57 N. Y. 1, 5 ; *G. F. Ins. Co.* v. *M. & C. R. R. Co.*, 72 N. Y. 90 ; *Hill* v. *S., etc., R. R. Co.*, 78 N. Y. 351.) A loss occasioned by a neglect or violation of the carrier's duty, on proper notice, to stop goods in transit is incidental to the transportation and covered by the shipping contract. (*Rubens* v. *L. H. S. Co.*, 20 N. Y. Supp. 481 ; *Magnin* v. *Dinsmore*, 62 N. Y. 35.) The court below erred in assuming that the defendant undertook to return the goods. The only attempt was to stop delivery and direct the return by a connecting carrier, who, under the terms of the bill of lading, was the agent of plaintiff. (*Root* v. *G. W. R. R. Co.*, 45 N. Y. 524.)

*Julius J. Frank* for respondents. All the facts and all inferences in support of the judgment must be deemed conclusively established in plaintiffs' favor. (*Trimble* v. *N. Y. C. & H. R. R. R. Co.*, 162 N. Y. 84 ; *Sweetland* v. *Buell*, 164 N. Y. 541, 548.) Defendant was a common carrier, and as such bound to respect plaintiffs' notice to stop in transit. (*Bank of Kentucky* v. *A. E. Co.*, 93 U. S. 174 ; Benj. on

Sales [Corbin ed.], § 1231; 2 Kent's Comm, 542; 2 Schouler on Pers. Prop. § 565.) The defendant was under the additional obligation to stop and return the merchandise, arising out of its express agreement so to do. (*Bloomingdale* v. *M. & C. R. Co.*, 6 Am. & Eng. Ry. Cas. 371.) The transaction in question is not governed by the shipping receipt. (*Campania* v. *Brauer*, 168 U. S. 104; *Ryer* v. *P. R. R. Co.*, 25 Misc. Rep: 290; *Kenny* v. *N. Y. C. & H. R. R. R. Co.*, 125 N. Y. 425; *Wheeler* v. *O. S. N. Co.*, 125 N. Y. 161.) Assuming that the shipping receipt applies to defendant's duty to stop in transit, as an incident to the contract of carriage, its limiting clauses do not exempt the defendant from liability in this action. (*Springer* v. *Westcott*, 166 N. Y. 117; *Grand* v. *Livingston*, 4 App. Div. 589; *Vanderbilt* v. *Schryer*, 91 N. Y. 392; *Seybolt* v. *R. R. Co.*, 95 N. Y. 562; *Carpenter* v. *Taylor*, 164 N. Y. 171; *Wheeler* v. *O. S. N. Co.*, 125 N. Y. 155; *Canfield* v. *B. & O. R. Co.*, 93 N. Y. 532; *Pearce* v. *Langfit*, 101 Penn. St. 511; *Rice* v. *Montgomery*, 4 Biss. 75; *Burnell* v. *N. Y. C. R. R. Co.*, 45 N. Y. 184.)

Gray, J. The plaintiffs, on March 31, 1897, sold to Goldsmith & Co., in Dallas, Texas, certain silk goods and delivered them to the Adams Express Company for carriage to the buyers. They received a bill of lading from the express company; which, among other things, provided that it should not be liable for loss or damage "from any cause whatever, unless, in every case, the same be proved to have occurred from the fraud or gross negligence of said express company, or their servants; nor, in any event, shall the holder thereof demand beyond the sum of fifty dollars, at which the above property forwarded is hereby valued, unless otherwise herein expressed, or unless specially insured by them, and so specified in this receipt." There was no insurance for special value and upon the bill of lading were stamped the words: "Value asked and not given." The plaintiffs, learning that Goldsmith & Co. were insolvent, on April 1st, sent to the office of the express company and demanded that it stop the goods in

transit. The express company's agent agreed to do so, after ascertaining that it could be done, if the plaintiffs would pay for a telegram. They assented and the telegram was, at once, made out by the agent and sent to the agent at Dallas, where it was received. For some reason, the merchandise was, nevertheless, delivered to the buyers and the goods were never returned by them to the plaintiffs, except a small part, of the value of $37.41. Thereupon, the plaintiffs commenced this action to recover damages of the defendant, to the extent of the value of the goods, by reason of its failure and neglect to obey the directions of the plaintiffs and to return the goods. At the conclusion of the trial, both parties moved for the direction of a verdict; whereupon the court directed a verdict for the plaintiffs and the judgment upon that verdict has been affirmed.

As the case comes here, all the facts must be regarded as having been determined in the plaintiffs' favor; inasmuch as there was no request made for the submission of any questions of fact to the jury and there was sufficient evidence to support the decision of the trial judge in directing the verdict. Therefore, the question, upon this appeal, is one which relates to the measure of the liability of the defendant. On the one hand, it is claimed for the appellant that that liability is, necessarily, limited by the terms of the bill of lading to a recovery of $50.00; while, on the other hand, it is insisted for the respondents that the recovery is not so limited, as the transaction was not governed by the bill of lading. The Appellate Division has taken the latter view; holding, in effect, that the defendant had undertaken to perform the duty, at the request of the plaintiffs, of stopping the merchandise in transit and, for their neglect to use reasonable care in performing that duty, it is liable to the extent that the plaintiffs suffered by the loss of their property. It was the view of the learned court that this undertaking of the defendant was something apart from, and independent of, the contract of carriage, as expressed in the bill of lading.

I think the judgment is right. The plaintiffs had the right

to stop the goods in transitu, by giving notice of their claim to the carrier, in whose possession the goods were actually, or constructively. The notice need not be given to the person in actual possession of the goods and may be given to the principal. In the latter case, to be effectual, it must be given at such time and under such circumstances that the principal, by the exercise of reasonable care and diligence, may communicate it to his agent, in time to prevent a delivery of the goods to the buyer. The defendant was, as forwarder, a principal, to whom notice was properly given. The rule appears to be settled upon authority. (See Benjamin's "Principles of Sales," p. 180, where the authorities are collated.) The appellant does not dispute the rule, with respect to the right of stoppage in transitu; but contends that the limitation in the bill of lading, defining the liability of the carrier by the agreed value of the goods, controls in all events. As the case comes to us, the neglect of duty, or the wrongful conduct, of the defendant in delivering the goods, after the notice, must be regarded as established. The action, therefore, is, actually, founded on the tortious act of the defendant and not on its contract of carriage. The exercise of the right of stoppage in transitu by the plaintiffs put an end to the contract of carriage and revested the possession of the property in them. They are to be regarded as having retaken the goods. (*Litt* v. *Cowley*, 7 Taunt. 169; English Ruling Cases, vol. 23, p. 411; *Cross* v. *O'Donnell*, 44 N. Y. 661, 665; *Penna. R. R. Co.* v. *American Oil Works*, 126 Pa. St. 485, 493; *Reynolds* v. *B. & M. R. R. Co.*, 43 N. H. 580, 592; *Jones* v. *Earl*, 37 Cal. 630.)

The relation of the parties changed. The defendant, from the time it was notified and directed its agent not to deliver the goods to the buyers, in legal contemplation, held the plaintiffs' property as their bailee. When, through the disobedience, or neglect, of its agent, or servant, the goods were delivered to the buyers, the defendant became liable for their then value to the plaintiffs, not upon contract, but in tort. As it was said in a case quite similar in its facts, though not

involving the same legal question, by Lord Chief Justice
COCKBURN, (*Pontifex* v. *Midland Railway Co.*, L. R. [3 Q.
B. Div.] 23), " the contract of the defendants was to carry and
deliver.   But under the circumstances which arose, the law
gave the plaintiff the right to put an end to the contract and
to demand back the possession of the goods, and he did so.
From that time the retention of the goods and the dealing
with them by the defendants became tortious."   If the carrier
delivers the goods to the purchaser after notice not to do so, it
is liable in trover to the seller.   (*Litt* v. *Cowley*, *supra*.)

The bill of lading, however broad its language with respect
to the value of the goods, which the holder might demand,
must be read with reference to its purpose.   It related to the
undertaking to carry and forward the goods to the consignees,
and to the incidents attendant upon its execution.   The price
paid for the carriage by the shippers was fixed by the reduced
valuation of the goods.   Upon the stoppage in transitu, the
defendant held the goods as the plaintiffs' and the law created
a new relation, to which the bill of lading had no reference.
The goods were to be returned to the plaintiffs.   We must
assume that it was possible for the defendant to do so and
its failure, or neglect, was wrongful and created a liability
altogether different from that which was intended to be
governed by the bill of lading.

For these reasons, I think the judgment appealed from
should be affirmed, with costs.

CULLEN, J.   I concur in the result on the ground that the
trial court might on the evidence have found that the plain-
tiffs were not notified at the time of shipment of the conditions
and limitations prescribed in the receipt nor asked the value
of the goods.   (*Springer* v. *Westcott*, 166 N. Y. 117.)   I dis-
sent, however, from the view that the provision of the receipt
limiting the liability of the carrier to the sum of fifty dollars
unless the value of the goods is declared does not apply to a
claim of the character of that now before us.   This condition
is not similar to those often found in contracts for shipment

by which it is sought to relieve the carrier from the consequences of its own negligence and fault, provisions which the court so strictly construe against the carrier and the effects of which they are so astute to avoid, that it may be doubted whether it would not be better even for the carrier were they held void as against public policy, which is the law in many jurisdictions. The limitation under consideration is fair and reasonable. Not only is the compensation for carriage based on the value of the goods, but the care and attention given by the carrier and his servants is necessarily influenced and affected by the knowledge that the goods are of great or of little value. Concealment of value, though without any improper motive on the part of the shipper, is, therefore, considered an imposition on the carrier and relieves the latter from liability in excess of the stipulated amount " unless something more in its conduct is shown than negligence to carry safely and to deliver promptly." (*Magnin* v. *Dinsmore,* 62 N. Y. 35.) Contracts of this character should be upheld and construed as fairly as other contracts. (*Hart* v. *Penna. R. R. Co.,* 112 U. S. 331.)

The action is for negligence. Defendant's line did not extend to Dallas, but ended at Kansas City, and the delivery complained of was made by the connecting company. Therefore, there was in fact no conversion by the defendant, but its fault lay in its failure to properly notify the connecting carrier. The action was, therefore, necessarily brought in its present form and not for conversion. The right of stoppage in transitu, as the term indicates, springs out of the contract of transportation. It exists only where the possession is in a person employed to forward or transport the property to its destination and it ends with delivery at the termination of the transit. (*Harris* v. *Pratt,* 17 N. Y. 249.) The right of the shipper to stop the delivery is absolute " and the carrier is bound to obey, leaving the justification of the stoppage with the seller as concerns the sale parties, since the due exercise of this right is at the seller's and not the carrier's peril." (Schouler on Personal Property, § 565.) The right of

stoppage in transitu is, therefore, a necessary incident of the contract of carriage, and though it may be that after notice of its exercise the strict liability of the carrier ceases and it thereafter becomes responsible only as a warehouseman, which is the case where the consignee fails to accept the goods, still the relation of warehouseman is contractual, and in either case the carrier assumes that relation solely by the virtue of its original contract of carriage. In other words, when a carrier contracts to carry it also contracts to stop the goods or to hold them as a warehouseman in certain contingencies, and there is no reason why the limitation of its liability for the value of the goods should not equally apply to all the responsibilities it assumes under the contract, whether of one kind or another.

The only point decided in *Pontifex* v. *Midland Ry. Co.* (L. R. [3 Q. B. Div.] 23) was that an action against a carrier for his failure to stop the goods in accordance with directions from the shipper was in tort, not on contract. I do not see how that doctrine is material to the question under discussion. It is sufficient, however, to say that an action against a carrier even for breach of its contract of carriage may be brought indifferently on the contract or in tort. (*Catlin* v. *Adirondack Co.*, 11 Abbott's New Cases, 377.)

The judgment should be affirmed, with costs.

O'BRIEN, MARTIN, VANN and WERNER, JJ., concur with GRAY, J.; CULLEN, J., concurs in result with memorandum, with whom PARKER, Ch. J., concurs.

Judgment affirmed.