GREENWALD et al. v. WEIR.

(Supreme Court, Appellate Division, First Department. March 5, 1909.)

1. CARRIERS (§ 158*)—CONTRACT OF SHIPMENT—VALIDITY.

In the absence of statute, a carrier and a shipper may agree, as one of the terms of the contract of shipment, on the value of the goods; and in case of loss thereafter the shipper is estopped from claiming that the goods were of greater value than the sum agreed on.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 663; Dec. Dig. § 158.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. CARRIERS (§ 158*)—CONTRACT OF SHIPMENT—VALIDITY.

Where the written receipt constituting the contract of shipment contains a clause by which the shipper agrees that the value of the property is not more than a stated sum unless a different value is stated, and no greater value is stated, the shipper stipulates and represents, as one of the terms of the contract, that the goods are not of a greater value than the sum stated, and is estopped from claiming in case of loss that the value was greater.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 663; Dec. Dig. § 158.*]

3. CARRIERS (§ 180*)—CONTRACT OF SHIPMENT—VALIDITY.

Interstate Commerce Act Feb. 4, 1887, c. 104, § 20, 24 Stat. 386 (U. S. Comp. St. 1901, p. 3169), as amended by Act Cong. June 29, 1906, c. 3591, § 7, 34 Stat. 593 (U. S. Comp. St. Supp. 1907, p. 906), providing that a carrier, on receiving property for interstate transportation, shall issue a bill of lading therefor, and be liable to the holder for any loss, and no contract shall exempt the carrier from the liability imposed, abrogates the common-law rule that each carrier is liable for the losses occurring on its own line, and makes the initial carrier liable for losses occurring on the lines of connecting carriers, and forbids it from exempting itself by agreement from such liability, but does not render void a clause limiting the carrier's liability to a specified sum, or exempting it from all liability in excess of that sum.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 180.*]

4. CARRIERS (§ 158*)—CONTRACT OF SHIPMENT—VALIDITY.

A contract of carriage by a carrier imposes on it the double obligation of carriage proper and of insurance, and it is reasonable and customary to fix a rate to be paid with reference to both liabilities, and to fix such rate it is necessary that the carrier should be apprised of the value of the article to be carried.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 158.*]

5. STATUTES (§ 219*)—CONSTRUCTION—DECISIONS OF INTERSTATE COMMERCE COMMISSION—EFFECT.

The opinions of the Interstate Commerce Commission interpreting the interstate commerce act are entitled to great respect from state courts called on to construe the act.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 296; Dec. Dig. § 219.*]

Appeal from Appellate Term.

Action by Isaac Greenwald and others against Levi C. Weir, as president of the Adams Express Company. The Appellate Term (59 Misc. Rep. 431, 111 N. Y. Supp. 235) reversed a judgment for plaintiffs for an amount less than that claimed, and ordered a new trial, and defendant appeals. Reversed, and judgment of trial court affirmed.

Argued before INGRAHAM, McLAUGHLIN, HOUGHTON, CLARKE, and SCOTT, JJ.

Walker D. Hines (Carl A. De Gersdorff and Edward V. Conwell, on the brief), for appellant.

Samuel J. Rawak, for respondents.

SCOTT, J. This is an action against an express company to recover the alleged actual value of merchandise shipped by plaintiffs upon a receipt in which was stated an agreed valuation of $50. The plaintiffs, at their place of business in the city of New York, delivered to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

defendant a package of dry goods to be carried to Waukegan, Ill. The plaintiffs had in their possession, and had been in the habit of using for some months, a book, issued by defendant, containing printed forms of express receipts. They had been in the habit of using similar forms for six years. The receipt was filled out by plaintiffs' shipping clerk, and delivered to defendant's driver, who signed it and left it with plaintiffs, and took away the package mentioned therein. The plaintiffs made no statement as to the value of the goods when shipping them, and accepted the receipt without objection. The package of goods was not delivered to the consignees, and its loss was not accounted for. The receipt contained the following clause, clearly and plainly printed thereon:

"In consideration of the rate charged for carrying said property, which is regulated by the value thereof and is based upon a valuation of not exceeding $50 unless a greater value is declared, the shipper agrees that the value of said property is not more than $50, unless a greater value is stated herein, and that the company shall not be liable in any event for more than the value so stated, nor for more than $50 if no value is stated herein."

At the trial plaintiffs proved that the value of the goods was $235, and sought to recover judgment for that amount. The Municipal Court awarded judgment for $50, the agreed value as stated in the receipt. The Appellate Term, by a divided court, has reversed the judgment, holding that, notwithstanding the stipulation as to the value contained in the receipt, the plaintiffs are entitled to recover the actual value of the goods. The defendant appeals.

It is conceded that but for the federal statute hereinafter quoted, the judgment of the Municipal Court was in accordance with the settled law of this state. We have recently had occasion to again consider that question, and it is unnecessary to dwell upon it here. The rule is that it is competent for a carrier and a shipper to agree, as one of the terms of the contract of shipment, upon the value of the goods shipped, and that when such an agreement has been made the shipper is estopped from claiming, in case of loss, that the goods were of greater value than the sum agreed upon. Furthermore, if the written receipt, which constitutes the contract of shipment, contains a clause by which the shipper expressly agrees that the value of the property is not more than a stated sum unless a different value is stated in the receipt, and no greater value is so stated, the shipper is held to have stipulated and represented, as one of the terms of his contract with the carrier, that the goods are not of a greater value than the sum stated, and will be estopped from afterwards claiming, in case of loss, that the value was actually greater. The exception to the rule arising in the so-called "baggage cases" is not pertinent to the present discussion.

The plaintiffs claim, however, that as to contracts involving interstate carriage the foregoing rule has been abrogated by the amendment to section 20 of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 386 [U. S. Comp. St. 1901, p. 3169]), passed June 29, 1906 (Act June 29, 1906, c. 3591, § 7, 34 Stat. 593 [U. S. Comp. St. Supp. 1907, p. 906]), which reads as follows:

"That any common carrier, railroad or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law. That the common carrier, railroad or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad or transportation company on whose line the loss, damage or injury shall have been sustained, the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof."

It will be seen at a glance that this statute has changed the common-law rule, as it has heretofore been applied in this and many other states, respecting the nonliability of the first carrier for losses occurring on the line of connecting carriers. It has heretofore been held at common law, and frequently stipulated by express provisions of shipping contracts, that the liability of each carrier is confined to losses occurring on his own line. This rule, in cases of interstate carriage, has now been abrogated, and hereafter the initial carrier remains liable to the shipper for losses occurring on the lines of connecting carriers, as well as on his own, having a right of recovery over against the connecting carrier if the loss has occurred on the line of the latter. The defendant's contention is that this is the whole extent to which the statute has abrogated or changed the existing rule. The plaintiffs insist that the statute goes further. The words upon which plaintiffs rely are that any common carrier—

"shall be liable to the lawful holder thereof for any loss, damage or injury to such property (the merchandise shipped) caused by it, * * * and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed."

What the statute forbids is the making of a contract, receipt, rule, or regulation exempting a carrier from the liability imposed by the statute. There is but one liability which can properly be said to be imposed by the statute, and that is the liability of the initial carrier for a loss occurring on the line of a connecting carrier. That is a new liability created and imposed by the statute. The liability of a carrier for a loss upon its own line is not new, and is not created or imposed by the statute, but existed before the statute was passed. The statute is completely satisfied, therefore, by construing it as creating and imposing on the initial carrier a new liability, and forbidding him from exempting himself, by stipulation or agreement, from that new liability. What the statute forbids is the use of any device whereby the carrier undertakes to "exempt" himself from the newly imposed liability. The use of the word "exempt" is appropriate if it was the intention of the Congress to prevent a carrier from relieving himself altogether from liability for a loss occurring on the line of a connecting carrier, but wholly inappropriate if intended to prevent an agreement between the carrier and the shipper as to the value of the goods to be shipped.

Both the federal courts and the courts of this state have uniformly distinguished between shipping contracts wherein the carrier has undertaken to exempt himself from liability at all and those in which he has agreed with the shipper as to the amount which should be taken as the value of the goods.   Contracts of the first kind have been generally condemned, and contracts of the second kind sustained.   Railroad Co. v. Lockwood, 17 Wall. 357, 21 L. Ed. 627; Hart v. Pennsylvania R. R. Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717; Zimmer v. N. Y. C. & H. R. R. Co., 137 N. Y. 460, 33 N. E. 642; Tewes v. North German Lloyd S. S. Co., 186 N. Y. 151, 78 N. E. 864, 8 L. R. A. (N. S.) 199; Barnes v. Long Island R. R. Co., 115 App. Div. 44, 100 N. Y. Supp. 593, affirmed without opinion 191 N. Y. 528, 84 N. E. 1108.   This distinction rests upon a sure and substantial basis.   The contract of carriage by a common carrier imposes upon the latter a double obligation—that of carriage proper, and that of insurance.   It is reasonable and customary to fix a rate to be paid with reference to both liabilities, and in order to fix such rate it is necessary that the carrier should be apprised of the value of the article to be carried. Hart v. Penn. R. R. Co., supra; Rosenthal v. Weir, 170 N. Y. 148, 63 N. E. 65, 57 L. R. A. 527; Zimmer v. N. Y. C. & H. R. R. Co., supra; Bates v. Weir, 121 App. Div. 275, 105 N. Y. Supp. 785.

It would scarcely be contended that, if plaintiffs had stated what they claimed to be the actual value of the goods shipped at the amount they now claim, and had incorporated that declaration in the contract itself, and had paid a rate expressly based upon such valuation, they would have been permitted to recover any larger sum by way of damages for the loss of the goods.   But this is precisely what they have done.   The ground upon which clauses like that in the receipt have been held to limit the amount of recovery is that they were incorporated into the contract, and constituted a binding representation by the shipper that the goods shipped were not worth more than the amount named in the receipt.

In Barnes v. Long Island R. R. Co. the court had before it a receipt similar to the one now under consideration, and was called upon to determine its validity and effect under a provision of the Constitution of Kentucky to the effect that:

"No common carrier shall be permitted to contract for relief from its common-law liability."

The court discusses and very clearly points out the fundamental distinction between a contract which seeks to avoid the common-law liability of a carrier, and one which merely provides for a limitation of liability to the amount at which the shipper himself values the goods at the time of shipment; and the same distinction has been recognized in many other jurisdictions.

The Interstate Commerce Commission, whose opinion in matters respecting the interpretation and effect of the law under which the commission was established is entitled to great respect, has held such a clause as that upon which defendant relies to be valid.   In Matter of Released Rates, 13 Interst. Com. R. 550, it said:

"We hold that it is in contravention neither of the letter nor the spirit of the law for the carrier to provide a higher rating for goods of special value than it applies to goods of the same class but of lower value. If it enforces its tariff in good faith, endeavoring to give to each shipment the rating which its value requires, the law affords complete protection against the frauds and misrepresentations of the shipper. * * * If a rate is conditioned upon the shipper's agreeing that the carrier's liability shall not exceed a certain specified value: (a) The stipulation is valid when loss occurs through causes beyond the carrier's control. (b) The stipulation is valid, even when loss is due to the carrier's negligence, if the shipper has himself declared the value, expressly or by implication; the carrier accepting the same in good faith as the real value, and the rate of freight being fixed in accordance therewith."

Upon principle and authority we are of the opinion that the amendment to section 20 of the interstate commerce act, upon which the plaintiffs rely, has not abrogated and was not intended to abrogate the well-established rule, recognized by the courts of this state and by the federal courts, that under such a state of facts as is presented in this case the carrier's liability is limited to the declared and agreed value specified in the shipping receipt.

It follows that the determination of the Appellate Term must be reversed, and the judgment of the Municipal Court affirmed, with costs to the appellant in this court and the court below. All concur.

---

HOWLAN v. NEW YORK & N. J. TELEPHONE CO.

(Supreme Court, Appellate Division, Fourth Department. March 3, 1909.)

DEATH (§ 48*) — ACTION—PLEADING—STATUTE GIVING RIGHT OF ACTION—FOR-
     EIGN STATUTE—SUFFICIENCY OF ALLEGATIONS.
     A complaint in an action in New York by an administrator for injuries
     resulting in death occurring in New Jersey, which merely alleged that the
     action was brought in accordance with the rights granted plaintiff by an
     act of the Seventy-Second Legislature of the state of New Jersey, entitled
     "An act to provide for recovery of damages for death by wrongful act,"
     etc., was insufficient for not alleging the provisions of the statute, or that
     it is similar to the New York statute, or that it gives the right of action
     to the administrator.
     [Ed. Note.—For other cases, see Death, Cent. Dig. § 63; Dec. Dig. § 48.*]

Appeal from Special Term, Oneida County.