JACOB RUMMELL et al., Trading as J. RUMMELL & CO.,
Appellants, *v.* ARCHIBALD BLANCHARD et al., as Trus-
tees in Bankruptcy of GEORGE A. ALDEN & COMPANY
et al., Respondents.

Warehousemen — warehouse receipts for goods in storage —
when transfer of negotiable receipt operates as transfer of right
of possession as well as title of goods described in receipt — when
action of replevin cannot be maintained against warehouseman
for goods transferred to third party by indorsement and delivery
of negotiable receipt.

1. Under the statute (General Business Law, Cons. Laws, ch. 20,
§ 125) a warehouseman who issues a negotiable receipt for goods,
delivered to him for storage, agrees in advance to hold the goods
for the account of any person to whom the receipt is negotiated,
and by the very act of negotiation loses his position as bailee for
the vendor and is transformed, without further assent, into a bailee
for the vendee. The moment that a receipt, negotiable in form, is
indorsed and delivered, a new relation of bailor and bailee springs
into being, and with the birth of that relation the possession, once
held by the bailee for the account of the vendor, is transmuted
into a possession for the account of the vendee. The result is a real
delivery to the same extent as if the goods had been transported to
another warehouse named by the vendee, and with this transmuta-
tion of possession the vendor's lien is at an end.

2. Plaintiffs sold goods, stored in a warehouse, for which they
held warehouse receipts, issued in their name, and negotiable in
form. These receipts the plaintiffs indorsed and transferred to the
purchasers of the goods. Thereafter one of the purchasers tendered
the receipts to the warehouseman and requested that new receipts
be issued. This was refused because the charges of the warehouse-
man were not paid. A few days later the purchasers became bank-
rupt. The goods have never been paid for, and the plaintiffs, on
learning that the buyers were insolvent, paid the warehouse charges
and demanded delivery. This demand was refused; an action of
replevin followed, and thereafter the trustees in bankruptcy of the
buyers were substituted as defendants. *Held,* that by their trans-
fer of the negotiable warehouse receipts to the purchasers, the
plaintiffs lost their lien as vendors and, hence, cannot maintain an
action of replevin therefor.

3. Plaintiffs contend that if they have lost their lien, they may none the less regain possession by the exercise of the right of stoppage *in transitu.* *Held,* that merchandise is not in transit unless it has been delivered to a bailee for the purpose of transportation, that this merchandise was never delivered to a bailee for that purpose and, hence, the right of stoppage never existed.

*Rummell* v. *Blanchard,* 167 App. Div. 654, affirmed.

(Argued November 18, 1915; decided November 30, 1915.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 7, 1915, which affirmed an order of Special Term denying a motion by plaintiffs for judgment on the pleadings and sustaining a demurrer to the complaint.

The following question was certified: "Does the amended complaint herein state facts sufficient to constitute a cause of action?"

The nature of the action and the facts, so far as material, are stated in the opinion.

*David Michelsohn* and *Milton Dammann* for appellants. The rights of stoppage *in transitu* and vendor's lien are equitable and analogous rights. (*Newhall* v. *Vargas,* 13 Me. 93; *Morris* v. *Shryock,* 50 Misc. Rep. 590; *Conrad* v. *Fisher,* 37 Mo. App. 352; *White* v. *Welsh,* 38 Penn. St. 396; Mechem on Sales, § 1526; Tiffany on Sales, 316; *D'Aquila* v. *Lambert,* 2 Eden, 76; *Gibson* v. *Carruthers,* 8 M. & W. 321; *Newhall* v. *Vargas,* 15 Me. 314; *Harris* v. *Pratt,* 17 N. Y. 249; *Buckley* v. *Feuniss,* 15 Wend. 137; Blackburn on Sales, 453; *Bloxam* v. *Sanders,* 4 B. & C. 941.) The doctrine of stoppage *in transitu* is applicable to the facts in the case at bar. (*Rosenthal* v. *Weir,* 170 N. Y. 148; *Brewer* v. *Boston & Albany R. R. Co.,* 179 Mass. 228; *Syms* v. *Schotten,* 35 Kan. 310; *Harding Paper Co.* v. *Allen,* 65 Wis. 576; *Covell* v. *Hitchcock,* 23 Wend. 611; *Mattram* v. *Heyer,* 5 Den.

629; *Lackington* v. *Atherton*, 8 Scott [N. R.], 38; *Dixon* v. *Yates*, 5 B. & Ad. 313; *Tanner* v. *Scovell*, 14 M. & W. 28; *Johnson* v. *Eveleth*, 93 Me. 306.) The doctrine of unpaid vendor's lien is applicable to the facts in this case. (Tiffany on Sales, 316; *McEwan* v. *Smith*, 2 H. L. Cas. 309; *Griffiths* v. *Perry*, 1 E. & E. 680; *Wilhelms* v. *Lees*, 1 Hold. N. P. 318; *Gill* v. *Pavenstedt*, 7 Am. Law Reg. [N. S.] 672; *Cooper* v. *Bill*, 3 Hurl. & Colt. 721; *Bentall* v. *Burn*, 3 B. & C. 423; *Farina* v. *Hume*, 16 M. & W. 119; *Hamburger* v. *Rodman*, 9 Daly, 93; *Matter of Batchelder*, 1. Low. 245; *Keeler* v. *Goodwin*, 111 Mass. 490; *Arnold* v. *Delano*, 58 Mass. 33; *Thompson* v. *B. & O. R. R. Co.*, 28 Md. 396; *Conrad* v. *Fisher*, 37 Mo. App. 352; *White* v. *Welsh*, 38 Penn. St. 396.) The transfer of the negotiable warehouse receipts did not cut off the plaintiffs' rights of stoppage *in transitu* and unpaid vendor's lien. (Williston on Sales, 921; *Lickbarrow* v. *Mason*, 1 H. & B. 364; *Rosenthal* v. *Weir*, 170 N. Y. 148; *Blanchard* v. *Page*, 8 Gray, 281; *Wooster* v. *Tarr*, 8 Allen, 270: *Gibson* v. *Madeem*, 1 Low. 272; *Gobbitt* v. *Gowdry*, 29 Barb. 509; *Lowing* v. *Stewart*, 1 W. & S. 222; *Miles* v. *Gorton*, 2 Cromp. & M. 504.)

*Joseph M. Hartfield* and *James J. Porter* for respondents. The complaint fails to state any cause of action based upon any unpaid seller's lien or upon the doctrine of stoppage *in transitu*. (*Bank of Rochester* v. *Jones*, 4 N. Y. 497; *Paddon* v. *Taylor*, 44 N. Y. 371; *First Nat. Bank* v. *Kelly*, 57 N. Y. 34; *Meyerstein* v. *Barber*, L. R. [2 C. P.] 38; *Moors* v. *Kidder*, 106 N. Y. 32; *Commercial Bank of Keokuk* v. *Pfeiffer*, 108 N. Y. 242; *Willets* v. *Hatch*, 132 N. Y. 41; *Ainis* v. *Ayres*, 62 Hun, 376; *M'Ewan* v. *Smith*, 2 H. L. Cas. 309; *Farina* v. *Hume*, 16 M. & W. 119.)

CARDOZO, J. The action is replevin. The plaintiffs sold to George A. Alden & Company and the New York

Shellac Company two hundred cases of shellac. At the time of the sale the shellac was stored in a warehouse, and the plaintiffs held warehouse receipts, issued in their name, and negotiable in form. These receipts the plaintiffs indorsed and transferred to the purchasers. This was done on February 13, 1913. On February 14, 1913, one of the purchasers, the New York Shellac Company, tendered the receipts to the warehouseman and requested that new receipts be issued. This was refused because the charges of the warehouseman were not paid. A few days later both purchasers became bankrupts. The shellac has never been paid for, and the plaintiffs on learning that the buyers were insolvent paid the warehouse charges and demanded delivery. This demand was refused; an action of replevin against the warehouseman followed; and thereafter the trustees in bankruptcy of the buyers were substituted as defendants. They have demurred to the complaint, the demurrer has been sustained, and the question whether a cause of action has been stated has been certified to this court.

The plaintiffs insist that the merchandise was never brought into the possession of the purchasers, and, hence, that they have never lost their lien as vendors for the payment of the price. The effect of the indorsement of warehouse receipts is now prescribed by statute. Where the receipts are negotiable in form, the holder to whom they have been negotiated acquires thereby "(a) such title to the goods as the person negotiating the receipt to him had or had ability to convey to a purchaser in good faith for value, and also such title to the goods as the depositor or person to whose order the goods were to be delivered by the terms of the receipt had or had ability to convey to a purchaser in good faith for value, and (b) the direct obligation of the warehouseman to hold possession of the goods for him according to the terms of the receipt as fully as if the warehouseman had contracted directly with him" (General Business Law [Cons. Laws,

ch. 20], § 125). Where the receipts are not negotiable the holder " acquires the right to notify the warehouseman of the transfer to him of such receipt, and thereby to acquire the direct obligation of the warehouseman to hold possession of the goods for him according to the terms of the receipt," but " prior to the notification of the warehouseman by the transferor or transferee of a non-negotiable receipt, the title of the transferee to the goods and the right to acquire the obligation of the warehouseman may be defeated by the levy of an attachment or execution upon the goods by a creditor of the transferor, or by a notification to the warehouseman by the transferor or a subsequent purchaser from the transferor of a subsequent sale of the goods by the transferor " (General Business Law, § 126). In brief, the warehouseman who issues a negotiable receipt agrees in advance to hold the goods for the account of any person to whom the receipt is negotiated, and by the very act of negotiation loses his position as bailee for the vendor, and is transformed, without further assent, into a bailee for the vendee. The warehouseman who issues a non-negotiable receipt does not become the bailee for the transferee of the receipt until notice of the transfer. From the moment of the negotiation in the case of a negotiable receipt, and from the moment of notice in the case of a non-negotiable receipt, the holder of the receipt is the bailor, and the warehouseman's possession is for the account of the new owner.

The significance of this statute will become manifest when we consider the law as it stood before the statute was enacted. It was long a mooted question whether the transfer of a warehouse receipt divested a vendor's lien unless the warehouseman had consented to become the bailee for the vendee. Some courts held the view that such a consent was necessary. It might be given in advance, but unless it was given in some form, either before or after the event, the warehouseman, it was

thought, remained the bailee of the vendor, and the transfer of the receipt, though effective to change the title, left the possession undisturbed (Williston on Sales, p. 739; Benjamin on Sales [5th ed.], pp. 216, 846, 853; *Farina* v. *Home*, 16 M. & W. 119; *Bentall* v. *Burn*, 3 B. & C. 424; *Hallgarten* v. *Oldham*, 135 Mass. 1, 9, 10, 11; *Selliger* v. *Kentucky*, 213 U. S. 200, 205; *Union Trust Co. & S. W. Co.* v. *Wilson*, 198 U. S. 530, 536; *Keeler* v. *Goodwin*, 111 Mass. 490). Whether the transfer of bills of lading had any greater effect is a question not before us. It is true that the rule which we have stated has been criticized (see, *e. g.*, *Conrad* v. *Fisher*, 37 Mo. App. 352, 367); indeed, until the enactment of this statute, we may doubt whether it had been fully adopted in this state (*Bank of Rochester* v. *Jones*, 4 N. Y. 497, 503; *Willets* v. *Hatch*, 132 N. Y. 41, 44. See also: *Gibson* v. *Stevens*, 8 How. [U. S.] 384, 399); but in many jurisdictions it was settled law. The critics of the rule maintained that the transfer of a warehouse receipt ought to be deemed equivalent to an actual delivery even without the warehouseman's assent; but never was it doubted that a change of possession resulted where the bailee or agent of the seller had given his assent, and had thereby been converted into a bailee or agent for the buyer. Less may perhaps have been required, but assuredly not more.

When the statute is read in the light of these decisions, its meaning is not doubtful. It charges every warehouseman who issues a negotiable receipt with a direct obligation to any one and every one to whom the receipt has been negotiated. It charges every warehouseman who issues a non-negotiable receipt with a like obligation after notice of the transfer. In the one case, the holder acquires " the direct obligation of the warehouseman to hold possession of the goods for him according to the terms of the receipt as fully as if the warehouseman had contracted directly with him." In the other case, the holder acquires a like right upon giving notice of the transfer.

The assent of the warehouseman to act as bailee is thus written by the law into the contract embodied in the receipt. "By a receipt in that form the bailee assents in advance to becoming bailee for any one who is brought within the terms of the receipt by an endorsement of the same" (*Union Trust Co. & S. W. Co* v. *Wilson, supra,* p. 536; *Selliger* v. *Kentucky, supra*). The moment that a receipt, negotiable in form, is indorsed and delivered, a new relation of bailor and bailee springs into being, and with the birth of that relation the possession, once held by the bailee for the account of the vendor, is transmuted into a possession for the account of the vendee. The result "is a real delivery to the same extent as if the goods had been transported to another warehouse named by the pledgee" (*Union Trust Co. & S. W. Co.* v. *Wilson, supra.* See also: *Mills* v. *Charlesworth,* L. R. [25 Q. B. D.] 421, 425). With the transmutation of possession the vendor's lien is at an end (Personal Property Law [Cons. Laws, ch. 41], § 135).

We think there is nothing in section 133 of the General Business Law (L. 1909, ch. 25) at war with this conclusion. That section provides: "Where a negotiable receipt has been issued for goods, no seller's lien or right of stoppage *in transitu* shall defeat the rights of any purchaser for value in good faith to whom such receipt has been negotiated, whether such negotiation be prior or subsequent to the notification to the warehouseman who issued such receipt of the seller's claim to a lien or right of stoppage *in transitu*. Nor shall the warehouseman be obliged to deliver or be justified in delivering the goods to an unpaid seller unless the receipt is first surrendered for cancellation." The provision that the lien shall not be enforceable unless the receipt is surrendered, reinforces our holding that the lien is at an end when the receipt has been negotiated.

The plaintiffs insist that if they have lost their lien, they may none the less regain possession by the exercise of the

right of stoppage *in transitu*. This claim need not long detain us. Merchandise is not in transit unless it has been delivered to a bailee for the purpose of transportation (*Rosenthal* v. *Weir,* 170 N. Y. 148, 154; *Harris* v. *Pratt,* 17 N. Y. 249, 252). This merchandise was never delivered to a bailee for that purpose (Williston on Sales, § 524; Personal Property Law, § 139). Since no transit was ever begun, there was none to intercept. It is true that the possession of the bailee was transformed from a possession for the account of one bailor into a possession for the account of another. If this change of the bailee's relation could be deemed equivalent to a transit of the merchandise, the same act which marked the beginning of the transit marked also its end. We may concede that while merchandise is still in course of transportation, the right of stoppage may be exercised against warehousemen as well as against carriers (*Harris* v. *Pratt, supra*). The warehouseman, in such circumstances, is an intermediary in the process which culminates in delivery. But where that process has been completed, and the warehouseman has undertaken to keep the goods as agent of the vendee, the merchandise is then at rest, and the right of stoppage is extinguished (Williston on Sales, *supra;* 25 Halsbury's Laws of England, p. 251).

The order should be affirmed with costs, and the question certified answered in the negative.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, COLLIN, SEABURY and POUND, JJ., concur.

Order affirmed.