## BUSS v. LONG ISLAND STORAGE WAREHOUSE CO.

No. 295.

Circuit Court of Appeals, Second Circuit.

April 10, 1933.

Blumberg & Parker, of New York City (Samuel M. Chapin, of New York City, of counsel; Lucien Hilmer and Monroe Chapin, both of New York City, on the brief), for appellant.

Herman G. Robbins, of Brooklyn, N. Y. (I. Louis Kottler, of Brooklyn, N. Y., on the brief), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

This appeal is from an order in a summary proceeding by a trustee in bankruptcy, which held the defendant, a warehouseman, for the value of certain rugs in its possession when the petition was filed. The facts were as follows: Cochrane shipped a parcel of rugs to the bankrupt, Koegel. It does not certainly appear whether this was a sale to Koegel, or whether he was to hold the rugs as bailee and sell them for Cochrane, but we shall assume the first, in accordance with the trustee's contention. Cochrane took out a "straight" bill of lading to Koegel, delivery to be made by the Reading Railroad at the Eastern District Terminal in Brooklyn, where the rugs arrived on November twenty-fourth. On December fifth, nobody having meanwhile called for them, the carrier delivered them to the defendant, which was accustomed to receive its unclaimed freight. On the same day the defendant sent out identical letters to both Cochrane and Koegel, which do not appear in the record, but of which the trustee's brief contains a copy, which we accept as correct, as we will again take the facts in his favor. These letters recited the receipt of the goods, that there were charges upon them and that delivery would be made upon receipt of the bill of lading. a written order and the charges due. Neither Koegel, nor any representative of his estate, answered the letter sent to him, but on the twenty-sixth Cochrane wrote to the defendant, telling it of the bankruptcy and directing it to hold the goods. Nearly six months later he got the original bill of lading from the carrier,

on which the defendant redelivered the rugs to him, receiving a bond of indemnity in exchange. A receiver had meanwhile been appointed for Koegel, though the record does not show when; in any case neither he, nor any one else, at any time made demand for the rugs. In December, 1931, the trustee obtained a rule nisi from the referee, seeking to charge the defendant summarily with the goods or their value. The defendant answered, protesting the jurisdiction of the court, but the referee overruled the objection and on the merits decided for the trustee. The judge affirmed his order and the defendant appealed to this court.

■ Two questions arise: The summary jurisdiction of the bankruptcy court; Cochrane's right to stop the goods in transitu. It chances that the two coalesce, so we proceed to the merits first. A seller may stop goods in transitu, not only while in the hands of the carrier, but while in those of any other bailee who has not agreed to hold them for the buyer. This was the common law in New York as in England. Harris v. Pratt, 17 N. Y. 249; Rummell v. Blanchard, 216 N. Y. 348, 110 N. E. 765, Ann. Cas. 1917D, 109 (semble); Gass v. Southern Pac. Co., 152 App. Div. 412, 137 N. Y. S. 261. It was also the doctrine in the federal courts. In re New York House Furnishing Goods Co., 169 F. 612 (C. C. A. 2); In re Burke & Co. (D. C.) 140 F. 971; In re Darlington Co. (D. C.) 163 F. 385; In re Talbot & Poggi (D. C.) 185 F. 986. It is now a part of the Sales of Goods Act of this state, New York Personal Property Law (Consol. Laws, c. 41), § 139 (1) (a), (2) (b). The defendant had never "acknowledged" that it held "on behalf of" Koegel, or "continued in possession as his bailee." It maintained a wholly neutral position, sending out notices to both buyer and seller that they might call for the rugs, which would otherwise run up further charges. For this reason Cochrane's power to stop in transitu still endured. The defendant was right in acceding to his demand and sending them back to him.

■ This situation forbad the bankruptcy court to take summary jurisdiction at all. The power over a bankrupt's estate depends primarily on actual custody, like that of any other court that proceeds in rem. Having taken hold of the property, it may award it to whom it thinks lawful, and other courts will recognize the interests so decreed. However, its power is not limited to goods of which it has actual custody through its officer; a marshal, a receiver, or a trustee. It may also seize summarily other goods, which

are in that case said to be "constructively" in its possession at petition filed. The underlying condition upon this incidental power is that the property must be in the possession of one who acknowledges that he holds it subject to the bankrupt's demand. Such a bailee, making no claim of interest, is subject to the orders of the bankruptcy court as such. Mueller v. Nugent, 184 U. S. 1, 22 S. Ct. 269, 46 L. Ed. 405; Babbitt v. Dutcher, 216 U. S. 102, 30 S. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969; Taubel, etc. Co. v. Fox, 264 U. S. 426, 432, 433, 44 S. Ct. 396, 68 L. Ed. 770. Further, the court will examine even an adverse claim of the bailee, so far as to determine whether it is patently absurd or made in bad faith, "colorable" only. May v. Henderson, 268 U. S. 111, 116, 45 S. Ct. 456, 69 L. Ed. 870. This is simple in statement but most confusing in application, as the books bear ample witness.

We shall assume that the court would have had jurisdiction, if the defendant had held for Koegel alone at petition filed, though third persons later made claims to the property. Board of Trade v. Johnson, 264 U. S. 1, 44 S. Ct. 232, 68 L. Ed. 533; O'Dell v. Boyden, 150 F. 731, 10 Ann. Cas. 239 (C. C. A. 6); Seattle Curb Exchange v. Knight, 59 F.(2d) 39 (C. C. A. 9); In re Hoey, Tilden & Co. (D. C.) 292 F. 269. These cases concerned brokers' seats in exchanges, which the courts have treated as more than choses in action. Those decisions in which the same doctrine has been extended to indubitable choses in action are even a stronger instance of the jurisdiction. Orinoco Iron Co. v. Metzel, 230 F. 40 (C. C. A. 6); In re Borok, 50 F.(2d) 75 (C. C. A. 2). Our decision in Re Fuller, 294 F. 71, appears to be otherwise, but it conflicts with In re Borok, supra, though we did not notice the earlier case at the time. The situation at bar is different. If the bailee already holds the goods for a third person at petition filed, the court may not proceed. First Nat'l Bank v. Chicago T. & T. Co., 198 U. S. 280, 25 S. Ct. 693, 49 L. Ed. 1051; Taubel, etc., Co. v. Fox, supra, 264 U. S. 426, 44 S. Ct. 396, 68 L. Ed. 770. Here, by virtue of the substantive law we have mentioned, the defendant did not then hold the rugs for the bankrupt; nor indeed did it hold them for Cochrane; it held them for which of the two first demanded possession. Even this is perhaps not strictly true. If Koegel had demanded the goods and the defendant had wrongfully refused delivery, the transitus would probably not have been at an end, and Cochrane might still have stopped them, though the defendant were

guilty of a conversion. But that we pass merely with this allusion; we will assume arguendo that the defendant held for whoever made the first demand. The filing of the petition in bankruptcy was not a demand; the defendant continued to hold as before; he had not become a bailee for Koegel. While we have found nothing in the books on the point, it seems to us that such an equivocal possession will not sustain summary proceedings. As we have said, the underlying notion is that for the jurisdiction to attach, the bailee must be unconditionally subject to the bankrupt's orders. True, a carrier or warehouseman in the defendant's position is always subject to the buyer's demand, and we are somewhat gratuitously assuming that this alone would make the buyer the bailor. But he is also subject to the seller's demand, which would equally make the seller the bailor. If at petition filed neither has made a demand, the bailor remains ambiguous; certainly he cannot be said to be the bankrupt buyer, and only then should the court interpose, for the facts supporting its jurisdiction must appear affirmatively.

Therefore, though the disposition of the appeal involves an incidental determination of the merits, strictly we can decide no more than that the bankruptcy court had no jurisdiction. The referee should have sustained the defendant's objection and dismissed the petition without prejudice to a plenary suit.

Order reversed; petition dismissed without prejudice to a plenary suit.