**688**

MERRIMACK MANUFACTURING COM-
PANY, Plaintiff,

v.

Sid BERGMAN and Sam Bergman, doing
business under the fictitious name and
style of "Little Bitty", Star Novelty
Company, Inc.; and Louis Kohn, Sam-
uel Wulwick, Gene Kohn and Julie
Bass, doing business as co-partners un-
der the fictitious name and style of
"Star Novelty Co.", Defendants.

United States District Court
S. D. New York.

Aug. 22, 1957.

Robinson & Henson, New York City, for plaintiff Truman Henson, Robert D. Cole, New York City, of counsel.

Philip I. N. Alperdt, New York City, for defendants Sid Bergman and Sam Bergman, d/b/a "Little Bitty".

Harry Sand, New York City, for defendants Louis Kohn, Samuel Wulwick, Gene Kohn and Julie Bass, d/b/a Star Novelty Co., Aaron Shapiro, New York City, of counsel.

LEVET, District Judge.

The defendant partnership, Star Novelty Co., has moved for summary judgment. Plaintiff, Merrimack Manufacturing Company, has made a cross-motion for summary judgment and for attorney's fees and has moved to dismiss the counterclaims, denials and affirmative defenses of the defendants. The basic issue is the ownership of 72 cases of fabric now in plaintiff's mill in Massachusetts. The action arises under Title 28 U.S.C.A. §§ 1335 and 2361, as amended (Federal Interpleader Act); the amount in controversy is of a value of approximately $10,000. The fundamental question is whether a seller under conditions hereinafter described has a right of stoppage in transitu.

For the purpose of this motion the plaintiff, a Massachusetts corporation, will hereinafter be referred to as Merrimack; the defendants Sid Bergman and Sam Bergman, doing business in Pennsylvania under the name and style of "Little Bitty," as "Bitty"; Star Novelty Company, Inc., a New York Corporation, as "Star," and Louis Kohn, Samuel Wulwick, Gene Kohn and Julie Bass, doing business in New York under the name and style of "Star Novelty Co.," as "Star Novelty."

The conceded facts as hereby found by me are as follows:

1. On or about October 1, 1956, Merrimack, a manufacturer of textile fabrics, sold certain 72 cases of fabric to Bitty. Bitty paid Merrimack on or about October 15, 1957.

2. Bitty thereafter, on or about October 9, 1956, sold the 72 cases to Sid Silverman, Inc. (not a party to this action), hereinafter known as "Silverman." The invoices are dated October 12, 1956 at Philadelphia.

3. On or about October 9, 1956, Bitty notified Merrimack to transfer 55 cases of the goods to Silverman. On October 10, 1956, Merrimack acknowledged the instructions to Bitty and stated: "We are to accept shipping instructions from Sid Silverman, Inc."

4. On or about October 22, 1956, Bitty notified Merrimack to transfer the balance to Silverman. On October 24, 1956, Merrimack acknowledged the instructions to Bitty with a copy to Silverman.

5. By letter dated October 10, 1956, Silverman directed Merrimack to transfer 55 cases to Star and to accept their shipping instructions. Star Novelty Co., Inc. is also referred to as Star Novelty Co.

6. Pursuant to a letter dated October 22, 1956, Silverman directed the transfer of the balance, 17 cases, to Star Novelty Co., Inc., also referred to in the letter as Star Novelty Co., and on October 31, 1956, Merrimack acknowledged that it held all these 72 cases for Star.

7. Thus, Merrimack sold and transferred title to Bitty, Bitty sold and transferred to Silverman, and Silverman sold and transferred title to Star.

8. Payments were made by parties involved as follows:

(a) Bitty paid Merrimack;

(b) Silverman ultimately paid Bitty. Silverman's check for $10,509.40 is dated October 26, 1956 and appears to have cleared on October 29, 1956, and Silverman's check for $5,293.69 is dated December 31, 1956 and was cleared on January 4, 1957;

(c) Star Novelty (the partnership) paid Silverman by checks to a factor on October 12, 1956, January 15, 1957 and January 28, 1957. Accordingly, Star Novelty (the partnership) as purchaser of the goods is the real party in interest and not Star Novelty Company, Inc.

9. On or about December 20, 1956, Bitty wrote to Merrimack: "This letter

will countermand all previous authorization to transfer goods to the account of Sid Silverman. We wish the following listed goods transferred back to our account. None of these goods is to be released until written confirmation is received from Little Bitty." This letter grew out of the fact that on the same day Merrimack had telegraphed Bitty that it held 20,860 yards for the account of Silverman (contrary it thus appears to its letter to Star Novelty of October 31, 1956).

The reason Bitty gave for this, as stated by Sid Bergman in his affidavit of August 1, 1957, is as follows: " 'Little Bitty,' feeling that it was being deceived by Silverman, it having failed to pay for its purchases by due date, and desiring to assert a lien against merchandise of the Silverman sale still in Silverman's name, contacted the plaintiff * * * " [1]

10. On December 26, 1956, Merrimack acknowledged Bitty's letter of December 20, 1956, and said: "The following cases are holding at the mill under your account."

11. In the meantime the goods remained with Merrimack, which gave no notice to Star Novelty or Silverman of the attempted revocation of the transfer from Bitty to Silverman.

12. On March 13, 1957, Star Novelty made a demand on Merrimack for delivery of the goods and on the same day Bitty demanded the goods. Plaintiff refused to deliver and later this action was instituted.

13. Bitty claims that Merrimack stated to Bitty on or about December 20, 1956 that the goods were still in Silverman's name, whereas in fact they were not.

14. At all times after the sale by Merrimack to Bitty the specific goods were segregated, appropriated and held by Merrimack merely in custody on account of the respective owner.

 Thus Bitty received payment from Silverman, the checks indicating the specific invoices. These payments may not be applied to some other account.

> " * * * A debtor paying money to a creditor to whom he owes several debts may direct the application of the payment because the money is his and he may do as he will with it and control its application. * * " Bank of California v. Webb, 94 N.Y. 467, 471.

Having received payment for the goods, Bitty is not in the position of an unpaid seller and, therefore, cannot assert an unpaid seller's lien. However, Bitty seeks to regain possession by the exercise of its alleged right of stoppage in transitu, despite the fact that the plaintiff as the warehouseman had attorned to Star Novelty as the buyer. The general rule with respect to this point is that a seller can neither assert a lien nor the power of stoppage in transitu where the warehouseman has attorned to the buyer. Williston on Sales, § 524. Thus in Rummell v. Blanchard, 216 N.Y. 348, 110 N.E. 765, Judge Cardozo said:

> "The plaintiffs insist that if they have lost their lien, they may none the less regain possession by the exercise of the right of stoppage in transitu. This claim need not long detain us. Merchandise is not in transit unless it has been delivered to a bailee for the purpose of trans-

---

[1]. Although not appearing as far as I am able to ascertain from the welter of somewhat incoherent papers submitted on this motion, a partial explanation of Bitty's action appears in its brief on page 4:
"On October 26, 1956, Silverman paid 'Little Bitty' $10,509.40 for part of the 72 case lot, but on December 10, 1956, when the balance fell due, payment was not forthcoming. However, on December 12, 1956, Silverman delivered to 'Little Bitty' its check No. 190, in the sum of $9,793.95, (there is a discrepancy, whether deliberate or not is unknown, between the written sum on the check and the sum in figures) to cover the balance due for part of the 72 case lot and for other items it owed 'Little Bitty'. But, said check was returned, payment thereon having been stopped by Silverman."

portation. Rosenthal v. Weir, 170 N.Y. 148, 154, 63 N.E. 65, 57 L.R.A. 527; Harris v. Pratt, 17 N.Y. 249, 252. This merchandise was never delivered to a bailee for that purpose. Williston on Sales, § 524; Personal Property Law, § 139. Since no transit was ever begun, there was none to intercept. It is true that the possession of the bailee was transformed from a possession for the account of one bailor into a possession for the account of another. If this change of the bailee's relation could be deemed equivalent to a transit of the merchandise, the same act which marked the beginning of the transit marked also its end. We may concede that while merchandise is still in course of transportation, the right of stoppage may be exercised against warehousemen as well as against carriers. Harris v. Pratt, supra. The warehouseman, in such circumstances, is an intermediary in the process which culminates in delivery. But where that process has been completed, and the warehouseman has undertaken to keep the goods as agent of the vendee, the merchandise is then at rest, and the right of stoppage is extinguished. Williston on Sales, supra; 25 Halsbury's Laws of England, p. 251." 216 N.Y. at pages 354–355, 110 N.E. at page 767.

Bitty, having divested itself of title, had no seller's lien. There is no right here of stoppage in transitu. Rummell v. Blanchard, 216 N.Y. 348, 110 N.E. 765.

■ Since Merrimack already agreed to hold the goods for Star Novelty after instructions from both Bitty and Silverman, Bitty has no right to stop the delivery of the goods. See Buss v. Long Island Storage Warehouse Co., 2 Cir., 1933, 64 F.2d 338.

■ The New York, Pennsylvania and Massachusetts statutes are identical in their definition of what constitutes transit for the purpose of stoppage by a seller. New York Personal Property Law, Consol.Laws, c. 41, § 139; Title 69 Purdon's Penn.Stats.Ann. § 287; Title 3A Ann.Laws of Mass. c. 106, § 47.

Accordingly, the motion of Star Novelty Company for summary judgment, determining that it is entitled to delivery of the merchandise, is granted; the counterclaim of Star Novelty Company is dismissed; the counterclaim of Bitty against plaintiff is dismissed; and plaintiff Merrimack Manufacturing Company is directed to deliver the 72 cases of textile fabrics to Star Novelty. Since the basic relief requested by plaintiff is included within the granting of Star Novelty Company's motion, the plaintiff's motion for summary judgment is denied.

■ The only issue to be determined is whether attorney's fees are to be awarded. Two of the parties here are not without fault. Merrimack erroneously represented that goods were held in Silverman's account, after giving Star a written acknowledgement of the fact that it held goods for Star's account. It subsequently and without notice to either Silverman or Star agreed to rescind the authorization previously made by Bitty. Bitty, in turn, attempted to exert an improper lien to which it had no legal right under the circumstances.

Under these circumstances no attorney's fees are awarded to the plaintiff or to Bitty. Star novelty Co. (the partnership) is entitled to costs against Bitty and Merrimack, but not to attorney's fees. In substance, Star Novelty is in the position of a successful litigant.

■ As a general rule, each party to adversary litigation is required to pay his own counsel fees. Warner v. Florida Bank & Trust Co., 5 Cir., 1947, 160 F.2d 766.

Settle order on notice.