In the Matter of The HERZ IMPORT-
ING CORP., Bankrupt.

No. 71 B 18.

United States District Court,
S. D. New York.

Nov. 1, 1972.

Lifland, Marcus & Angel, New York City, for the trustee-petitioner by Joshua J. Angel, New York City, of counsel.

Lauterstein & Lauterstein, New York City, for petitioner, Peggy Herz by Paul C. Guth, Henry W. Lauterstein, and Timothy M. Finnegan, New York City, of counsel.

## OPINION

POLLACK, District Judge.

This is a petition to review a Referee's ruling sustaining summary jurisdiction of the Bankruptcy Court to determine the ownership of the proceeds of a policy of life insurance on the life of Henry H. Herz. The insured was the president of the bankrupt, a close corporation. The insurance was made payable to the corporation as "primary beneficiary, creditor, as its interest may appear, balance of proceeds, if any, to Peggy Herz . . . daughter of the insured" who is the petitioner herein.

The trustee in bankruptcy claims the entire proceeds of the policy, which he views as the major asset of the estate. The petitioner claims that she is entitled to the death benefits payable under the policy and, further, that, in any event, the ownership interests in the death benefits may only be resolved in a plenary suit. Bankruptcy Act § 23, 11 U.S.C. § 46. On order of the Referee, the money has been paid by the insurance company into a separate segregated interest bearing time deposit account pending and subject to the resolution of the controversy.

The primary question to be decided here is whether the petitioner has shown sufficiently that she has a substantial and not merely a colorable adverse claim to the insurance proceeds. If she has, the trustee's claim must be adjudicated in a plenary suit, not a summary proceeding. Brouner v. Seligson, 416 F.2d 705, 706 (2d Cir. 1969) (per curiam); In Re Ira Haupt & Co., 289 F.Supp. 966, 972 (S.D.N.Y.1968) (Pollack, J.).

For the reasons shown hereafter, the petitioner has demonstrated a sufficiently substantial and not a merely colorable adverse claim to the ownership of the major portion of the proceeds of the insurance on her father's life so as to require a resolution of the trustee's conflicting claim thereto by a plenary suit in a court of competent jurisdiction.

## I.

In ruling that summary jurisdiction was appropriate, the Referee acted upon the assumption that the trustee had either actual or constructive possession of the res, stating:

> More to the point it is the existence of the physical property consisting of the insurance policy which makes specific reference to the bankrupt as beneficiary which is at the touchstone of this court's actual possession of a res. Moreover, even if it were not a question of actual physical possession of a res, the fact that the bankrupt is named as a beneficiary is sufficient so long as the funds have not already been paid over to another party for the court would then have constructive possession of an asset within the duty of the trustee to administer and within the power of this court to determine rights to it.

At the date the petition in bankruptcy was filed by the creditors of this corporation, the insurance policy in question is shown by the present record to have been neither owned by, nor in possession of, the bankrupt. According to petitioner, the policy was effectively in her possession and control when the trustee first learned of it sometime after the filing in bankruptcy. In fact, a petition filed with the bankruptcy court by the trustee in April, 1971 stated that the trustee "has been informed that the original of the policy has been transmitted by the attorneys of the Estate of Henry H. Herz to the insurance company for payment, acting presumably on behalf of Peggy Herz, the secondary beneficiary." The policy was not owned by the corporation or even purchased by

the corporation; rather as described *infra*, it was individually obtained and owned by the petitioner's father, who was the insured.

Moreover, the proceeds of the policy were never subject to the control of the bankrupt; the insurance company was not willing to turn over the funds to any party, absent a release from any and all adverse claims. An order of the referee, in effect without prejudice, was required to have the fund paid by the insurer into a special deposit account. That order, issued after a turnover order had been granted and vacated, left the funds under the direction of the Court and not of the trustee:

> ORDERED that the Trustee be and he hereby is authorized to deposit the monies received in a separate segregated interest bearing time deposit account in the Irving Trust Company at 233 Broadway, New York, New York, subject to the further order of this court, and it is further
>
> ORDERED, that the said time deposit certificate shall remain in the custody of the aforesaid bank subject to the further order of this court.

And, at the hearing on the turn-over application held on January 11, 1972, the insurer was described by the Referee as a "stakeholder" and the Referee characterized this case as one "where the insurance company holds the funds and is not quite certain who is entitled to any of the proceeds". Transcript of the Adjourned Motion on Turnover Proceeding, pp. 9, 2.

▆ The sum of these facts equals neither the actual nor constructive possession of the disputed fund by the bankrupt at the date of the petition in bankruptcy necessary to create the basis for summary jurisdiction. *See* Schmitt v. Blackwelder, 379 F.2d 278, 281 (2d Cir. 1967); Buss v. Long Island Storage Warehouse Co., 64 F.2d 338, 339 (2d Cir. 1933). In *Buss*, the Court looked for evidence of uninhibited control over the contested goods as a test for constructive possession, stating:

The underlying condition upon this incidental power is that the property must be in the possession of one who acknowledges that he holds it subject to the bankrupt's demand. Such a bailee, making no claim of interest, is subject to the orders of the bankruptcy court as such.

In the instant case, the insurer patently resisted assertions of control by both the daughter and the trustee (who stands as successor to the bankrupt). While Continental Assurance Co. ("Continental") did not claim any entitlement to the disputed fund, it did claim that upon payment of the fund as ultimately directed the insurer should receive a discharge from any further liability to any of the parties to this proceeding. This type of interest, the heart of classic interpleader cases, is, in effect, an adverse claim to the control of the fund. There is no basis in fact for concluding that Continental held the fund subject to the control of the bankrupt; thus, there is no basis for holding that the fund is now subject to the summary jurisdiction of the bankruptcy court. Murphy-Palmer Seeds, Inc., v. Mitchell, 425 F.2d 705 (4th Cir. 1970) (per curiam) does not require a contrary conclusion. There the insurance companies made no claims to the policy proceeds and voluntarily turned them over to the trustee; and, the adverse claim was not made under the terms of the insurance policy itself but was based on the attachment of an alleged lien under state law that arose within four months of bankruptcy. *See also*, Glens Falls Insurance Co. v. Strom, 198 F.Supp. 450, 456 (S.D.Cal. 1961).

Furthermore, at the date of bankruptcy, the daughter, rather than the bankrupt, had control of the policy, which represented the proceeds. In Re Detroit Waterproof Fabric Co., 295 F. 338, 342 (E.D.Mich.1924), stated:

> If the trustee were in possession of the insurance policies, or if the petitioner or any other person were holding possession thereof merely for, or under, the bankrupt or the trustee as

its successor in interest, such summary proceedings would be the proper procedure for adjudication of the conflicting claims concerning such policies. *As, however, the petitioner is, and at the time of filing of the bankruptcy petition herein was, in actual possession of the policies in controversy, and asserting a claim (not simply colorable but of a substantial character)* to the right to hold such possession in its own interest and adversely to the bankrupt and to the trustee, *petitioner is an adverse claimant, and its rights as such cannot,* against its consent, *be tried in this summary proceeding* . . . (Emphasis added).

The trustee herein relies on the case of In Re Estes, 105 F.Supp. 761, 764 (N.D.Texas 1952), aff'd sub nom. Pearson v. Rapstine, 203 F.2d 313 (5th Cir. 1953). However, that was a case in which the trustee, not the adverse claimant, had possession of the res.

## II.

The remaining question to be decided is whether petitioner asserts a claim sufficiently substantial so as to avoid a summary proceeding.

After the policy was issued, the insured executed a collateral assignment of the policy, using Continental's form, which named Herz Importing Corp. as the assignee. The assignment purported to transfer all of the owner's right, title and interest in the policy to that corporation to the following extent: "as collateral security for the payment of any and all indebtedness, now or hereafter existing and due from me to the Assignee, including the amount of any premiums paid by the Assignee on the policy." The assignment authorized the Assignee to obtain loans of money on the policy against its cash value and to surrender it for its cash value, and authorized and directed the insurance company to pay to the Assignee the amount of any indebtedness owed by the assignor to the Assignee.

The intent, meaning and effect of the collateral assignment is disputed by the parties. The trustee relies on the language appearing on the face of the document. The petitioner, however, contends that the document is ambiguous and when construed against the history of the insurance and the understandings in accordance with which the printed form of assignment was used, bears a meaning which would award the bulk of the death benefits to her. The history follows.

Prior to 1966 Henry H. Herz was insured under seven separate policies of life insurance issued by Continental Assurance Co., varying in amount and totalling $150,000 and issued over a period of years. In February, 1966 Herz requested that the seven policies be combined and converted to a single $150,000 Participating Endowment Policy maturing in 37 years, with certain specified features. Herz or his wife, Susanne, had been the owner of the underlying separate policies; his wife or his daughter, Peggy, had been the designated beneficiary thereof. Accordingly, a single policy dated February 12, 1966 (the policy now in controversy) was issued in the face amount of $150,000, naming Henry H. Herz as the owner and the Insured. The designated beneficiary of the new policy was the insured's wife, Susanne, if living, otherwise Peggy Herz, the daughter.

About a month after the issuance of the combined policy, Herz transmitted the collateral assignment of the policy to Continental, naming Herz Importing Corp. as the Assignee. Herz also filed a change of beneficiary designating

> Herz Importing Corp., a New York corporation, primary beneficiary, creditor, as its interest may appear; balance of proceeds, if any, to Susanne Herz, wife of the Insured but if she is not living, to Peggy Herz, daughter of the Insured.

In October, 1970, a further and final change of beneficiary eliminated the name of Susanne from the foregoing designation.

The New York General Agent for Continental Assurance Co. (of Chicago, Illinois) has supplied a statement illumining the contractual intent and understandings of the Insured and the insurance company accompanying the changes mentioned above which states that the purpose of the Insured in 1966 was to convert his then outstanding insurance to a combined $150,000 policy "on a 'Split-Dollar' plan". This type of plan, which has become increasingly popular among corporate executives since the 1950's, allows the premiums on the life of the executive to be "split" between the company and the insured. Upon the death of the executive, the company is first paid the cash surrender value of the policy, or, alternatively, is reimbursed for premium payments actually made by the company. The balance of the proceeds is then paid to the executive's beneficiary or estate. Under this arrangement, the company is assured of the return of its premium payments through the security of the policy. The effective cost of the plan to the company is the loss of any return on the amounts thus paid.

The popularity of this plan has business and tax explanations. For the executive, "split-dollar" provided a relatively inexpensive life insurance program, since the amount of premiums paid by the executive decreased from year to year, ultimately being fully eliminated. The tax spur was provided by Revenue Ruling 55–713, which treated split-dollar plans as a series of interest-free loans to the executive, which did not result in income to the executive or in a deduction for the company. Furthermore, under such a plan, upon death of the insured, the proceeds pass free of income tax to the company and to the executive's beneficiary.

The legal arrangement used to effect a split-dollar plan can vary. Ownership of the policy can be placed in the company, with a collateral agreement used to schedule premium payments. Alternatively, the company and the executive may be made co-owners, with the policy itself prescribing premium contributions. Or, the executive may be the sole owner of the policy, assigning it to the company as security for periodic loans toward premium payments. *See generally* II G. Washington & V. Rothschild, Compensating the Corporate Executive 715–17 (3d ed. 1962); *see also*, H. Saks, "Life and Health Insurance Tips for Attorneys: Split Dollar," N.Y.L.J., Nov. 3, 1972, at 1, col. 1.

Continental's General Agent described the form used for the policy in question as follows:

Herz Importing Corp., his employer, would pay that part of the annual premium equal to the increase in the guaranteed cash value of the policy each year and the Insured would pay the balance. Dividends were to be used to purchase additional paid-up life insurance each year. In order to secure the corporation for its premium advances, the corporation was to be named a beneficiary under the policy to the extent of its interest, or advances, and as is usual under such plans, the object of the insured's bounty was to be named beneficiary of the balance of the proceeds.

With respect to the Collateral Assignment, the General Agent states that this was "to effectuate the Split-Dollar plan and to secure the corporation for its premium advances." The General Agent further mentions personal conversations with the Insured during the latter's lifetime with respect to premiums due, premiums to be paid by the corporation and amounts to be paid by the Insured, and interest on loans and states that

the undersigned has no hesitation in stating that this policy was always intended as a "Split-Dollar plan" and that the intent, as usual in such plans, was that the interest of the corporation, whether during the lifetime of the Insured or upon his death, was to be no greater than the amount of its advances of premiums.

On October 29, 1970 Herz died, survived by his daughter Peggy Herz. On

January 20, 1971 she transmitted the policy to Continental and requested payment of the insurance proceeds as the named beneficiary. Meanwhile, on January 7, 1971 an involuntary petition in bankruptcy was filed against Herz Importing Corp. and it was adjudicated a bankrupt on February 23, 1971.

At the time of his death, the Insured owed the bankrupt $210,749.63 arising out of a variety of transactions. The trustee in bankruptcy consequently claims the entire death benefits payable under the policy which amount to $142,959.30.

■ It is unnecessary for present purposes to go further than to determine whether the petitioner presents a substantial, not merely a colorable, adverse claim to property sought by the trustee. On this issue the Court finds that petitioner has made a substantial prima facie showing of an adverse right to the insurance proceeds. *Cf.* Sahn v. Pagano, 302 F.2d 629, 630 (2d Cir.), cert. denied, 371 U.S. 819, 83 S.Ct. 34, 9 L.Ed.2d 59 (1962).

The record shows beyond dispute that Henry H. Herz was insured under previous policies, under which the instant petitioner was a designated beneficiary, and that those former policies were traded in for a new single policy that also named the petitioner a beneficiary.

The insurance company's forms used in connection with this new policy do not preclude a finding that a split-dollar plan was instituted. Whether such a plan was actually effected may turn on questions of state insurance law which will be resolved in a plenary proceeding. Similarly, the trustee's allegations of fraud on creditors and misuse of corporate funds to procure and carry the insurance raise issues of state law which should be tried upon a full record of fact.

The trustee argues that evidence of the mutual intent of the Insured and the insurance company in respect to the collateral assignment and designation of beneficiary is not admissible to vary the legal presumptions arising from the written contract. The trustee offers language which could have been, but was not, used to more emphatically carry out the intent urged by the petitioner and confirmed by the insurance company's General Agent. But the language in which that agreement is cast is susceptible of the meaning asserted by the parties to the insurance contract and may be explained by the background of the formation of the questioned obligation.[1]

■ The parol evidence rule would not necessarily bar the use of extrinsic documentary and oral evidence relevant to the interpretation of this policy.[2]

1. Dow Chemical Co. (U.K.) Ltd. v. S. S. Giovannella D'Amico, 297 F.Supp. 699. 706 (S.D.N.Y.1969) (Pollack, J.); Sutro Bros. & Co. v. Indemnity Ins. Co. of North America, 264 F.Supp. 273, 283 (S.D.N.Y.), aff'd, 386 F.2d 798 (2d Cir. 1967); Kessler Export Corp. v. Reliance Ins. Co. of Philadelphia, Penna., 207 F. Supp. 355, 358 (E.D.N.Y.), aff'd, 310 F.2d 936 (2d Cir. 1962) (Per Curiam); *cf.* L. Lewitt & Co. v. Jewelers' Safety Fund Society, 249 N.Y. 217, 164 N.E. 29 (1928).

2. Union Ins. Soc. of Canton, Ltd. v. William Gluckin & Co., 353 F.2d 946, 951 (2d Cir. 1965) ("Language is ambiguous, within the meaning of the parol evidence rule, when it may reasonably be construed in more than one sense. . . . Because the language in the Union policy under discussion is ambiguous, resort should be had to any available extrinsic evidence for the purpose of ascertaining the intent of the parties."); Asheville Mica Co. v. Commodity Credit Corp., 335 F.2d 768, 770 (2d Cir. 1964) ("The better rule is that such evidence [extrinsic oral and documentary evidence] is always admissible where relevant to the interpretation of a contract, for the parol evidence rule . . . comes into operation only when the meaning of that which may not be varied or contradicted is determined."); United States v. Jacobs, 304 F.Supp. 613, 619–620 (S.D.N.Y. 1969) (Evidence of surrounding circumstances, intent and purposes of the contracting parties is admissible under both federal and New York law in the interpretation of ambiguous contracts).

That premiums were paid with funds of a close corporation—if this should prove to be the case here—does not necessarily mean that the corporation, once bankrupt, can recover back any amounts so paid. Reif v. Equitable Life Assurance Society, 268 N.Y. 269, 197 N.E. 278 (1935). Nor does payment of premiums by a beneficiary automatically vest title in that beneficiary. United States v. Fried, 309 F.2d 851, 852 (2d Cir. 1962) (Per Curiam).

### III.

As this Court stated in In Re Ira Haupt & Co., 289 F.Supp. 966, 972 (S. D.N.Y.1968):

> The summary jurisdiction of a bankruptcy court is considered more expeditious and hence a more economical form of administration of matters involving a bankrupt and a procedure which more effectively protects creditors and the estate. Of course, these benefits may not override the safeguards against undue celerity or be used as arguments to deprive one of substantial rights, which include the right to a plenary proceeding to adjudicate the claims of an estate.

The present case provides such an instance where expedience threatens to endanger substantive rights. Whether the contentions of the petitioner or those of the trustee can be sustained is something to be determined in a plenary suit.[3]

The Referee's order sustaining summary jurisdiction to determine the rights to the proceeds of the insurance is reversed and summary jurisdiction thereof is denied.

So ordered.

---

3. Harrison v. Chamberlin, 271 U.S. 191, 194–195, 46 S.Ct. 467, 70 L.Ed. 897 (1926) (Plenary suit required where the adverse claim rested upon disputed facts —for which valid, conflicting evidence existed—and upon a dispute of law); In Re Miracle Mart, Inc., 293 F.Supp. 417, 419 (S.D.N.Y.1968) (The likelihood of success on the merits for the trustee

does not preclude a plenary proceeding unless the adverse claim is effectively frivolous); see In Re Wonderbowl, Inc., 456 F.2d 954, 956 (9th Cir. 1972) (Per Curiam) ("Plenary litigation may be preferable where important questions turning on nonbankruptcy law are involved.")