**In re NATIONAL HOSPITAL AND IN- STITUTIONAL BUILDERS COMPA- NY, a Partnership, Debtor.**

**No. 83 Civ. 6490 (WCC).**

United States District Court, S.D. New York.

March 27, 1984.

Hollyer, Jones & Pindyck, New York City, for appellant Midland Bank and Trust Company; A. Rene Hollyer, Bruce Eben Pindyck, New York City, of counsel.

Anderson, Russell, Kill & Olick, P.C., New York City, for James L. Garrity, Trustee in Bankruptcy; John Reid, New York City, of counsel.

DeMov, Morris, Levin & Shein, New York City, for Washington Federal Savings & Loan.

## OPINION AND ORDER

CONNER, District Judge:

This is an appeal from an Order of Bankruptcy Judge John J. Galgay, dated July 1, 1983, finding that the Bankruptcy Court has summary jurisdiction to resolve the parties' competing claims to certain funds in an escrow account at the Midland Bank & Trust Company ("Midland"). For the reasons set forth below, that decision is affirmed.

### I.

The background facts necessary to resolve the jurisdictional issue are not in dispute and can briefly be summarized as follows:

In August of 1977, National Hospital and Institutional Builders Company ("National" or "Debtor") commenced proceedings under Chapter XII of the Bankruptcy Act of 1898 (the "1898 Act" or "Old Act"), 11 U.S.C. § 1, *et seq.* (repealed). One of the Debtor's assets, perhaps its principal asset, was a nursing home located in Staten Island, New York (the "Nursing Home"). On July 18, 1978, the Trustee in Bankruptcy (the "Trustee") entered into a contract to sell the Nursing Home to Beth Rifka, Inc. ("Beth Rifka"). Prior to the sale, Washington Federal Savings and Loan ("Washington") was the mortgagee on the Nursing Home property. Under the proposed sale, Washington was to hold a first mortgage on the Nursing Home, and the Trustee was to hold a second mortgage.

One condition of the sale was that Beth Rifka obtain appropriate licenses to operate the Nursing Home. As a result of litigation initiated by the City of New York, there arose some uncertainty whether Beth

Rifka would be able to maintain the necessary certificate of occupancy. Consequently, in May of 1981, the Trustee, Beth Rifka, Washington and several additional parties entered into an escrow agreement (the "Escrow Agreement"). Pursuant to the Escrow Agreement, the Trustee and Washington delivered the documents of title to the escrow agent and Beth Rifka made a down payment of over $200,000, which was placed by the escrow agent in an interest-bearing account at Midland, pending resolution of the dispute concerning the certificate of occupancy. In an Order dated September 16, 1981, the Bankruptcy Judge approved the Escrow Agreement, stating:

> [T]he escrow agreement between the parties dated May 2, 1981, with respect to the proceeds of the aforementioned sale, ... hereby is approved except that no proceeds held in escrow shall be distributed by the escrow agents until further order of this Court.

App. to Memo of Appellee at 39–40.

To date, the question as to the certificate of occupancy has never been resolved and the money paid into escrow by Beth Rifka, which with interest now exceeds $255,000, remains on deposit at Midland. While Beth Rifka was, under the Escrow Agreement, to operate the Nursing Home while the occupancy dispute was being litigated, it no longer does so, having lost its operating license.

Midland, on the one hand, and the Trustee and Washington, on the other, have raised conflicting claims of entitlement to the funds in the escrow account. Midland's claim is based directly upon Beth Rifka's interest in the escrow monies and allegedly derives from three sources: (1) pursuant to a June 1981 loan agreement under which Midland loaned Beth Rifka $300,000, Midland has a right to set off any funds held by Beth Rifka at Midland to reduce the outstanding loan balance, which is currently in excess of the escrow account balance; (2) on March 4, 1983, Beth Rifka assigned its interest in the escrow account to Midland; and (3) Midland has obtained a judgment against Beth Rifka based upon Beth

Rifka's default on the June 1981 loan, and has perfected a lien against the escrow account. The Trustee and Washington claim that Beth Rifka has no remaining interest in the escrow account because it defaulted under the contract for the sale of the Nursing Home. Thus, they claim that as sellers they are entitled to retain Beth Rifka's deposit. Accordingly, some court, whether it be this Court or the Bankruptcy Court, will be required to determine whether the successors in interest of the purchaser or the seller are entitled to the funds in the escrow account.

## II.

■ Despite Midland's alternative argument to the contrary, there can be no doubt that the 1898 Act and not the Bankruptcy Reform Act of 1978 (the "Reform Act" or the "1978 Act"), 11 U.S.C. § 101, *et seq.*, is applicable to this controversy. Section 403(a) of the 1978 Act Pub.L. 95–598, 92 Stat. 2683, § 403(a), provides:

> A case commenced under the Bankruptcy Act [of 1898], and all matters and proceedings in or related to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the substantive rights of the parties in connection with any such bankruptcy case, matter, or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the [1978] Act had not been enacted.

Thus, the date the bankruptcy case is commenced determines whether the Old Act or the 1978 Act governs the controversy. Where, as here, bankruptcy proceedings were commenced under the Old Act in 1977, prior to the effective date of the Reform Act, the provisions of the Old Act continue to govern the case, regardless of whether the particular dispute arose after the effective date of the 1978 Act; it is irrelevant that the escrow account at issue here did not come into existence until 1981. Consequently, because the 1898 Act is applicable, the Supreme Court's decision in *Northern Pipeline Constr. Co. v. Mara-*

*thon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and the Emergency Bankruptcy Rule adopted by the Judges of this Court in response to that decision, are not germane to the inquiry.

The parties are in agreement that the limits of the summary jurisdiction of the Bankruptcy Court under the 1898 Act were accurately set forth by the Court of Appeals for the Second Circuit in *In re Schoenberg*, 70 F.2d 321 (2d Cir.1934).

> As to property within the actual or constructive possession of the bankrupt, a court of bankruptcy can determine in a summary proceeding controversies involving adverse claims of title, but, when possession is held by a third person, adverse claims may not be summarily adjudicated unless by consent or unless the claim is merely colorable.

*Id.* at 322; *see* Appellees' Brief at 14; Appellant's Reply Brief at 2. In response to Midland's claim that the dispute over the escrow fund falls outside of the Bankruptcy Court's summary jurisdiction, the Trustee and Washington claim that: (1) the escrow account is already within the actual control of the bankruptcy court; (2) even if not, Midland's claim to the money in the account is merely colorable; and (3) Midland consented to the jurisdiction of the Bankruptcy Court.

■ I find appellees' first contention, which was the basis for the Bankruptcy Court's exercise of summary jurisdiction, to be dispositive. The escrow account, which was created to hold the documents of title and the down payment in a transaction involving the sale of the bankrupt's assets, was established post-petition and was immediately placed under the control of the Bankruptcy Court. The account was, therefore, controlled by the bankruptcy court well before the instant dispute arose.

This case is not like *Hollywood Nat'l Bank v. Bumb*, 409 F.2d 23 (9th Cir.1969), cited by Midland, in which the court held that the Bankruptcy Court did not have summary jurisdiction to entertain a breach of contract suit by the trustee in bankrupt-

cy against a bank, involving the bank's allegedly improper handling of an escrow account. The court clearly explained that its holding was based upon the fact that the dispute involved a claim for damages and did not involve a claim to the underlying funds. *See id.* at 24–25 ("Since the present action is not to recover any specific property or fund which was once part of the bankrupt estate, but is, rather, to enforce a chose in action, *i.e.*, to collect damages for breach of contract and thereby obtain indemnification, this is not a case for summary jurisdiction."). Here, however, the dispute involves direct claims to the underlying fund, which was established pursuant to the supervision of the Bankruptcy Court.

■ Beth Rifka entered into the contract to purchase the Nursing Home from the Trustee knowing that it was dealing with a bankrupt's estate and would therefore be subject to the oversight of the Bankruptcy Court. It could not now contest the Bankruptcy Court's jurisdiction to determine the parties' rights to money previously paid as part of the transaction involving that sale of the bankrupt's asset. Since Midland's claim to the escrow funds is derivative of Beth Rifka's interest in the account, Midland cannot now claim any rights greater than those possessed by Beth Rifka.

■ Most of the other cases cited by Midland can be distinguished on the ground that the genesis of the dispute between the bankrupt and the third party anteceded the commencement of bankruptcy proceedings. *See Fiberglass Specialty Co., Inc. v. Bor-Son Constr., Inc.*, 678 F.2d 78 (8th Cir. 1982) (conflicting claims to money retained by one claimant under construction contract prior to bankruptcy filing by other claimant); *Bayview Estates, Inc. v. Bayview Estates Mobile Homeowners Assoc.*, 508 F.2d 405 (6th Cir.1974) (dispute between landlord and tenant's group over rent payments in escrow account existing prior to landlord's bankruptcy filing); *In re American Southern Pub. Co.*, 426 F.2d 160, 163 (5th Cir.1970) (books in warehouse subject to conflicting claims of bank and

company prior to company's bankruptcy filing); *In re Casco Chem. Co.*, 335 F.2d 645 (5th Cir.1964) (dispute over interpleader fund already in litigation prior to bankruptcy filing). Thus, these cases demonstrate that property which is not otherwise within the summary jurisdiction of the Bankruptcy Court does not suddenly fall into that category merely because one party files for bankruptcy; if the bankrupt never had possession of the property, the intervening bankruptcy filing only gives the Bankruptcy Court jurisdiction over the trustee's claim to possession of the property, not the property itself.

Similarly, in *In re Herz Imp. Co.*, 349 F.Supp. 1106 (S.D.N.Y.1972), the court specifically found that the proceeds of an insurance policy—which were subject to the conflicting claims of the bankrupt corporation and the insured's daughter—were, until the court intervened, held by the insurance company independently of the control of either the bankrupt or the insured's daughter.

> In the instant case, the insurer patently resisted assertions of control by both the daughter and the trustee (who stands as successor to the bankrupt).... There is no basis in fact for concluding that Continental held the fund subject to the control of the bankrupt; thus, there is no basis for holding that the fund is now subject to the summary jurisdiction of the bankruptcy court.

*Id.* at 1108. Here, by contrast, the escrow funds were held in an account at Midland subject to the control of the Bankruptcy Court.

■ The Supreme Court has stated that under the 1898 Act, "[t]he bankruptcy courts 'have summary jurisdiction to adjudicate controversies relating to property over which they have actual or constructive possession.'" *Katchen v. Landy*, 382 U.S. 323, 327, 86 S.Ct. 467, 471, 15 L.Ed.2d 391 (1966). The test for constructive possession is one of uninhibited control—whether the one who holds the property does so subject to another's demand. *See In re Herz*, 349 F.Supp. at 1108, *citing Buss v.*

*Long Island Storage Warehouse Co.*, 64 F.2d 338, 339 (2d Cir.1933). Because the escrow account at issue here was established in connection with the sale of the bankrupt's assets following the commencement of Chapter XII proceedings, and because that account has since its inception been held subject to further order of the Bankruptcy Court, I agree that the Bankruptcy Court has summary jurisdiction to determine which of the claimants—the Trustee, Washington or Midland—is properly entitled to the monies deposited in the account. Accordingly, the decision of the Bankruptcy Court is affirmed and this appeal is dismissed.

SO ORDERED.