No. 13441

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

FIRST NATIONAL BANK OF CIRCLE,
Circle, Montana,

Plaintiff and Appellant,

-vs-

GRAHAM CHARLES GARNER and SYDNEY MORRIS et al.,

Defendants,

Graham Charles Garner and Sydney Morris et al.,

Cross Plaintiffs,

-vs-

FEDERICO CRUZ, et al.,

Cross Defendants,

Frederico Cruz,

Cross-Plaintiff,

-vs-

BERNARD GADD,

Cross-Defendant.

---

Appeal from:  District Court of the Seventh Judicial
              District,
              Hon. C.B. Sande, Judge presiding.

Counsel of Record:

    For Appellants:

        Towe, Ball & Enright
        Thomas Towe argued, Billings, Montana

    For Respondents:

        George Dalthorp argued, Billings, Montana
        Crowley, Kilbourne, Hanson, Gallagher & Toole,
         Billings, Montana
        Gene Huntley, Baker, Montana
        J.B. Casas, Jr., Los Angeles, California

---

Submitted:  March 21, 1977

Decided: JUL 26 1977

Filed: JUL 26 1977

Thomas J. Kearney
                                        Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Plaintiff, First National Bank of Circle, Circle, Montana, filed this action on May 22, 1972, in the district court, McCone County, for a declaratory judgment to determine its legal obligations regarding certain bank deposits and cashier's checks. On May 6, 1975, plaintiff's motion for summary judgment was granted, plaintiff then filed a motion for award of attorney fees. This motion was denied on May 5, 1976 and from that denial plaintiff appeals.

In 1971, Dr. Federico Cruz acquired control of the British American Bank Limited of the Bahamas. Dr. Cruz was president of the bank when its license was suspended by the government of the Bahamas in early 1972. On March 23, 1972, Dr. Cruz, representing himself to be the president of the British-American Bank, Ltd.(Glasgow, Scotland), opened a corporate checking account with plaintiff First National Bank of Circle, Montana. He presented checks endorsed to the British American Bank Limited from depositors located all over the world, in the approximate amount of $1,600,000.00. On May 8, 1972, the account balance was approximately $1,542,868.01 and Dr. Cruz requested a withdrawal of $1,327,788.00. The Circle Bank issued cashier's checks to him personally totaling this amount.

On May 15, 1972, the Circle Bank received a telephone call and a telegram from a Bernard Gadd who informed the Circle Bank he had been appointed Provisional Liquidator for the British-American Bank,Ltd., on May 11, 1972, and demanded the Circle Bank stop payment on the cashier's checks issued to Dr. Cruz on May 8, 1972. Gadd later demanded that all remaining funds be

frozen and returned to him. May 15, 1972, was the first notice to the Circle Bank of such liquidation proceedings.

On May 22, 1972, the Circle Bank filed this action against defendants. Although the action was styled "Complaint for Declaratory Judgment", the district court treated it as an interpleader. The Circle Bank asked the district court (1) to adjudicate its legal obligations to defendants regarding the bank deposits and cashier's checks, (2) for a determination whether it should freeze the account and stop payment on the cashier's checks, and (3) for reasonable attorney fees and costs.

Dr. Federico Cruz filed a counterclaim demanding damages against the Circle Bank for the face amount of the cashier's checks, which Dr. Cruz alleged were wrongfully dishonored by the Circle Bank. The Liquidator filed a counterclaim for a full accounting of all monies deposited in the Circle Bank in the name of the British-American Bank Ltd. On November 1, 1972, the Circle Bank filed a motion for the discharge of itself and its officers. After a lengthy litigation process, on May 7, 1975, the district court ordered:

> "* * * that the motions for summary judgment of the First National Bank of Circle are in all respects granted and that the motion for summary judgment of the British American Bank Limited and the Official Liquidators thereof against Federico Cruz are granted with respect to all matters dealt with herein and with respect to the ownership of the funds in the custody of the Court * * *."

Ownership was granted to the Official Liquidator. All questions were settled, except for the First National Bank of Circle's claim for attorney fees.

Plaintiff presents one issue for review by this Court-- whether plaintiff First National Bank of Circle is entitled to attorney fees and costs to be paid out of the interpleader fund?

To answer this question the Court must decide whether the Circle Bank was a disinterested stakeholder. If the stakeholder does not stand indifferent between the claimants, it is not entitled to an allowance for attorney fees. Defendant Bernard Gadd contends this action was not an interpleader and that plaintiff had an interest in keeping the funds in its bank as long as possible. This Court in Central Montana Stockyards v. Fraser, 133 Mont. 168, 193, 320 P.2d 981, stated:

> "'An attitude of perfect disinterestedness, excluding even an indirect interest on the part of the plaintiff is indispensable to the maintenance of the bill [of interpleader] * * *.'"

However, Rule 22(a), M.R.Civ.P., removes this restriction and expressly provides it is not a ground for objection when a plaintiff in an interpleader action avers he is not liable in whole or in part to any or all of the claimants. Since the award of costs and attorney fees is within the discretion of the court, such award is commonly denied when the stakeholder, although disinterested, is in some way culpable as regards the subject matter of the interpleader proceeding, but not sufficiently culpable to warrant denial of interpleader altogether. Merrimack Manufacturing Co. v. Bergman, 154 F.Supp. 688.

Plaintiff contends the reason it did not file a strict interpleader action was to make sure this money would continue to receive interest. The money did receive interest in the amount of approximately $345,000.00. Defendants, on the other hand, contend plaintiff's motive was not all that altruistic. They felt the bank's reason for not filing an interpleader was to keep the funds as a deposit in its bank as long as possible. The record

- 4 -

shows a motion was made demanding that plaintiff pay into the registry of court or deposit for safekeeping in a bank not a party to this action, designated by the court, all sums in the account in question.

The First National Bank of Circle resisted the transfer of the funds from its custody, arguing that it should be released from all liability in consideration of its releasing the funds. On November 6, 1972, the funds were ordered transferred to the Security Trust and Savings Bank of Billings, Montana.

During the period the plaintiff had control of the funds, from March 23, 1972, until they were paid over to the Security Trust and Savings Bank, the plaintiff paid an interest rate of 4% compounded quarterly. The Security Trust and Savings Bank paid an interest rate of 5 1/8% compounded quarterly. At 4% the original deposit would have produced $7,700 interest during the period from the date of the initial deposit, March 23, 1972, to the date of the filing of the action, May 22, 1972. During this period plaintiff Circle Bank paid no interest on the funds, thus for this period it had the use of this money interest free to invest as it saw fit.

It appears from the district court record that plaintiff was in no hurry to release the funds. Mr. Towe, attorney for plaintiff stated:

> "We are not anxious to release the funds until we receive discharge, at least for the liability."

Thus it seems plaintiff in this action was not a disinterested stakeholder. The Circle Bank indicated before it would release these funds it desired further protection from the court in exonerating it from any liability. When the action is not one of strict interpleader, and plaintiff is more than a mere stakeholder,

- 5 -

attorney fees are not allowable. Metropolitan Life Insurance Co. v. Enright, 231 F.Supp. 275, 278.

In this case the record reveals the Circle Bank was not a disinterested stakeholder. The Bahama Bank Liquidator was attempting to hold plaintiff liable for $97,000 withdrawn from the account prior to the time the liquidation procedure started. Such a claim can hardly be characterized as a minor part of the litigation. Circle Bank had a great deal riding on the outcome of this litigation. It is generally recognized that when a party interpleading claimants to funds or property disputes the amount of the fund or to the extent of the property, has some other substantial interest in the subject matter or the outcome of the litigation, or does not stand indifferent between the claimants, he stands on the same footing as any other litigant and is not entitled to an allowance for attorney fees. Groves v. Sentell, 153 U.S.465, 14 S.Ct. 898, 38 L ed 785.

Where a plaintiff has placed himself in a position necessitating interpleader to avoid double vexation, he is not entitled to attorney fees. Gresham State Bank v. O and K Construction Co., 231 Or. 106, 370 P.2d 726. Here, it appears from the record plaintiff used less than prudent banking practices in handling this account. On March 24, 1972, Edward Towe, president of the Circle National Bank called the Office of the Comptroller of the Treasury in Washington D. C. to make sure Dr. Cruz was president of the British-American Bank, Ltd., of Scotland. He never received a response and no further inquiries were made. Subsequently plaintiff issued $1,327,788.00 in cashier's checks to Dr. Cruz at his request, including one check in the sum of $914,288.00 payable personally to Dr. Cruz, out of the account

registered in the name of the British-American Bank, Ltd., of Scotland without further confirmation. These cashier's checks became an issue in the lawsuit and in the plaintiff's pleadings it asked the court to adjudicate the rights and obligations of defendants to the funds represented by the cashier's checks.

To deny the award of counsel fees to the stakeholder will not be to leave its attorney uncompensated. It simply represents a decision that all or part of the fees incurred by the stakeholder should be paid out its pocket, rather than out of the pocket of the prevailing claimant. 3A Moore's Federal Practice ¶22.16[2], p. 3144, states:

> "The prevailing principle in interpleader actions
> brought in the federal courts, whether under the
> interpleader statute or under Rule 22(1), is that
> it is within the discretion of the court to award the
> stakeholder costs including a reasonable attorneys'
> fee out of the deposited fund."

The district court did not abuse its discretion in denying attorney fees to the First National Bank of Circle. The judgment of the district court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices.