REIGHARD et al. v. HIGGINS ENTER-
PRISES, Inc.

Nos. 6305, 6306.

Circuit Court of Appeals, Third Circuit.
June 7, 1937.

Charles C. Lark, Fred B. Moser, and W. Lloyd Snyder, all of Shamokin, Pa., for appellants.

J. A. Welsh, of Shamokin, Pa., for appellees.

Before BUFFINGTON, DAVIS, and BIGGS, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from a decree of the District Court appointing a trustee in bankruptcy for the purpose of liquidating the assets of the appellee, and enjoining the sale of these assets in the foreclosure proceedings under the direction of the state court by the sheriff of Northumberland county, Pa.

The appellants contend that under the circumstances of this case, they should have been allowed to complete, under the direction of the state court, the foreclosure which had reached the point where practically the only thing left to be done was the sale of the property by the sheriff.

The question raised by the appeal is whether or not the District Court, having taken jurisdiction of the proceedings, should, under the facts of this case, have relinquished that jurisdiction and allowed the appellants to continue with the sale.

The facts out of which this question arises are as follows: In 1924, George J. Higgins erected a building in Tamaqua, Pa., housing a well-equipped hotel and theater, for approximately $750,000. In order to finance this work, he borrowed $742.300, of which $500,000 was secured by a first mortgage on the Tamaqua property and on two other properties in Pennsylvania, the Majestic theater in Shamokin, and a building intended to be used as a theater, but in fact used as a market, in Pottsville. The remaining $242,300 was secured by his personal notes. In 1929, Higgins formed a corporation under the laws of Delaware, known as Higgins Enterprises, Inc., the appellee in the present suit. He transferred to this corporation the Tamaqua, Shamokin, and Pottsville properties subject to the first mortgage, and took back a second mortgage to secure the $242,300 for which he had given his personal notes. The principal indebtedness on the first mortgage has been reduced to $400,000.

In 1934, the Guarantee Trust Company, trustee for the bondholders under the first mortgage, upon the default of the appellee to pay taxes and interest, instituted foreclosure proceedings in the court of common pleas of Northumberland county, Pa. On November 10, 1934, judgment was entered on a scire facias sur mortgage, in the sum of $484,400.25, representing principal, interest, and costs. The appellee petitioned the court for a rule to show cause why such judgment should not be stricken from the record, but after argument the rule was discharged. The property was then levied upon by the sheriff and was advertised for sale for April 3, 1935. On April 1, 1935, two days be-

fore the sale was to take place, the appellee presented its petition to the United States District Court under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207) and it issued an order restraining the foreclosure sale. A special master was thereupon appointed, who, after holding many hearings, filed his report to which the appellants took thirty-seven exceptions.

In his report the special master, among other things, found that the market value of the properties at Tamaqua, Shamokin, and Pottsville was $200,000, $175,000, and $65,000, respectively; that the value of the furnishings and equipment was $21,000, making the total value of these properties including the equipment $461,000; that the total indebtedness of the appellee was $856,-358.26, which sum includes $42,741.10 in taxes, $489,244.25 due on the first mortgage, $314,990 due on the second mortgage, $1,372 due to a judgment creditor, and $8,010.91 due to general creditors; and that the appellee was hopelessly insolvent. He further found that the plan of reorganization was indefinite and contingent; that it did not provide for the payment of administration expenses in cash, as required by the statute; that it was not feasible; that it was not presented in good faith; that it did not provide for the payment in cash of the claims of the bondholders more than seven-eighths of whom did not accept the plan and that it did not provide for the payment of taxes. Consequently he recommended that the plan be not confirmed; that the estate be liquidated in the bankruptcy court; and that the injunction restraining the foreclosure sale be made permanent. The District Court affirmed these findings and issued the decree from which the appeal was taken.

■ There can be no doubt that the court of bankruptcy may, upon notice and for cause shown, enjoin the commencement or continuance of a foreclosure proceeding in a state court. Bankr.Act § 77B (c) (10), 11 U.S.C.A. §.207 (c) (10); Duparquet Huot & Moneuse Co. v. Evans, 297 U.S. 216, 222, 56 S.Ct. 412, 415, 80 L.Ed. 591. However, where the mortgagee is in possession after default, either personally or through custodial receivers appointed by the court, a court of bankruptcy does not have the power to take possession of the mortgaged premises un-

til the default has in some way been cured. Continental Bank & Trust Co. v. Nineteenth & Walnut Streets Corporation, 79 F.(2d) 284 (C.C.A.3); In re Frances E. Willard National Temperance Hospital, 82 F.(2d) 804 (C.C.A.7); Duparquet Huot & Moneuse Co. v. Evans, supra. There is, therefore, under the facts of this case, a serious question as to whether or not the District Court had power to take possession of the mortgaged premises over the objection of appellants after the decree of foreclosure had been entered and the land had been levied upon by the sheriff, unless the default had in some manner been cured. No cases were cited showing the court had authority summarily to take possession of the property in question, but even if it did have, we feel that under the facts in this case it should not have done so over the objection of the first mortgagee.

■ The appellee's liabilities are almost double the amount of the value of its assets. The unpaid balance on the first mortgage as computed to date, plus taxes due on the property, exceeds its total value by more than $100,000. From these facts alone it is apparent that the second mortgagee and the other creditors have no equity whatever that could possibly be realized in the liquidation of the property. The only result of taking possession of the property in this case and proceeding in the court of bankruptcy would be to incur additional expense and diminish the amount to be realized by the first mortgagee. It was stated without contradiction that the total cost of liquidation in bankruptcy would amount to approximately $20,000, while the expenses of the foreclosure sale in the state court would amount to only a few hundred dollars. The addition of this burden to this insolvent estate can not be justified. Under these circumstances, the injunction staying the sale by the sheriff should not have been granted and, if granted, when the facts became known, it should have been vacated. In re Schulte-United, Inc., (D.C.) 50 F.(2d) 243, affirmed in (C.C.A) 49 F.(2d) 264; In re Murel Holding Corporation (C.C.A.) 75 F.(2d) 941; Oakland Hotel Co. v. Crocker First National Bank (C.C.A.) 85 F.(2d) 959.

The decree of the District Court is reversed with directions to remand the cause to the state court.