**In re G. S. F. CORP., Debtor.**

**G. S. F. CORP., Plaintiff,**

**v.**

**INLEASING CORPORATION, f/k/a Industrial Leasing Corporation and Haufler Associates, Inc., Defendants.**

**Bankruptcy No. 80–230–HL.
Adv. No. A80–0681.**

United States Bankruptcy Court,
D. Massachusetts.

Dec. 22, 1980.

---

Charles R. Bennett, Jr., Riemer & Braunstein, Boston, Mass., for plaintiff/debtor.

James N. Rudolph, Gargill, Sassoon & Rudolph, Boston, Mass., for Haufler Associates.

Edward J. Bertozzi, Jr., Providence, R. I., for Inleasing Corp.

## MEMORANDUM ON DENIAL OF JURY TRIAL

HAROLD LAVIEN, Bankruptcy Judge.

A trial scheduled in the above–matter for 10:00 A.M., December 17, 1980, (a date selected and agreeable by all parties at the original trial date of the 5th) was preceded by a series of last minute motions filed on the 15th and 16th that, whatever the intentions, would have the effect of postponing the agreed trial date at a time when the prompt resolution of the issue was essential for a disclosure statement and potential reorganization whose financing contained a built–in time limit. Because of these time constraints, it was necessary to rule on these motions without an opportunity to set forth earlier in any detail the rationale for the Court's denial of this last minute jury request.

The Debtor–in–Possession brought a complaint entitled, declaratory judgment, but in reality, seeking reformation of an equipment lease's purchase options. Industrial Leasing Corp. was the original lessor of the equipment under an agreement that provided in a somewhat convoluted fashion an option to purchase at the end of lease for $100,000. This portion of the dispute has now become moot, as Industrial has agreed to accept $100,000. in full payment of the option to purchase as long as the Court determines who has the rights to the option. The remaining dispute is with Haufler Associates, Inc. who financed the sale and lease back of the equipment by originally leasing it from Industrial and then subleasing it to the Debtor and who now claims by virtue of the original lease, the right to exercise the option, pay the $100,000, and sell the equipment to Debtor for what is fair–market value, approximately $400,000. The Debtor insists that the option was intended to pass through its sub–lease and if it does not, then its sub–lease should be reformed to so provide, and that it is free to exercise the option directly with Industrial. The dispute largely reduces itself to the interpretation of lease assignments and written contracts and the parties' respective rights thereunder including the real grava-

men of the Debtor's claim—namely, equitable reformation. There is no dispute that the Debtor has possession of the equipment which it presently uses in its manufacturing of foam, that the equipment is essential to any plan of reorganization, that the Debtor has an interest in the property as that term is defined in 11 U.S.C. § 541, and that its interest is property of the Chapter 11 estate under 11 U.S.C. § 541 over which the Bankruptcy Court has exclusive jurisdiction. 28 U.S.C. § 1471(e).

Article 1, § 8, Clause 4 of the U. S. Constitution gives Congress the right "To establish uniform laws on the subject of bankruptcies throughout the United States."

"Congress was to have an all–inclusive power, through the bankruptcy grant, to enact any legislation reasonably framed and related to the subject of bankruptcies, . . .", 1 Collier Bankruptcies (14th Ed.) Par. 0.02, *U. S. v. Bekins*, 304 U.S. 27, 58 S.Ct. 811, 82 L.Ed. 1137 (1938), *Wright v. Vinton Branch of the Mountain Trust Bank of Roanoke*, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937).

In its exercise of this power, Congress, when in 1898 it created the "Courts of Bankruptcy", 11 U.S.C. § 1(10) and 11 U.S.C. § 11, gave the Court the jurisdiction to "Cause the estates of bankrupts to be collected, reduced to money, and distributed, and determine controversies in relation thereto, . . ." 11 U.S.C. § 11(a)(7).

▇ It is well established that Bankruptcy Courts are Courts of Equity. *See, e. g. Young v. Higbee Co.*, 324 U.S. 204, 214, 65 Ct. 594, 599, 89 L.Ed. 890, 898 (1945); *Local Loan Co. v. Hunt*, 292 U.S. 234, 240, 54 S.Ct. 695, 697, 78 L.Ed. 1230, 1232 (1954). As such, Bankruptcy Courts have traditionally determined issues by chancery, non–jury methods. *Matter of Michigan Brewing Co.*, 24 F.Supp. 430 (W.D.Mich.1938), aff'd. *sub nom. Conlon v. Michigan Brewing Co.*, 101 F.2d 1007 (6th Cir. 1939). *See, also, In Re Rude*, 101 F. 805 (D.Ky.1900); *In Re Christensen*, 101 F. 243 (N.D.Iowa 1900). The Supreme Court has held that there is no right to a jury trial before the Bankruptcy Court even though there would be if the issue were tried elsewhere. *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966).

Further, it should be noted that there was no jury used in bankruptcy practice in England at the time of the adoption of the Constitution. Instead, bankruptcy laws were administered by the Lord Chancellor. 34 & 35 Henry VIII, Ch. 4 (1542). *See* Countryman, *A History of American Bankruptcy Law*, 81 Comm'l L.5. 226 (1976).

There is nothing unique about the conflicting claim to a residual right in the leased equipment in the debtor's possession that would create a compelling constitutional right to a jury trial that would overcome the ". . . overriding consideration that equitable principles govern the exercise of bankruptcy jurisprudence, *Bank of Marin v. England*, 385 U.S. 99 at 103, 87 S.Ct. 274 at 277, 17 L.Ed.2d 197 (1966).

▇ A secured debt or lien is, so far as the Constitution of the United States is concerned, a no more sacred kind of property than an unsecured debt." *In re Burgh*, 7 F.Supp. 184, 185 (N.D.Ill.1933). As long as Congress' Bankruptcy legislation is reasonably framed and related to the subject of bankruptcy, it can determine how contractual rights will be determined even if that results in depriving a creditor of a remedy as under 11 U.S.C. § 93(d). *In the Matter of Cartridge Television, Inc.*, 535 F.2d 1388, 2 B.C.D. 833 (2nd Cir. 1976).

Considering the "strong policy of the Bankruptcy Act that estates be administered as efficiently as possible . . ." *Matter of T.M.T. Trailer Ferry, Inc.*, 577 F.2d 1296 (5th Cir. 1978), coupled with the need to effectuate a "paramount objective of bankruptcy proceedings, that of expeditious administration," 3 *Collier on Bankruptcy* ; supra 957.15 at 247; *In the Matter of Cartridge Television, Inc. supra.* Congress' determination that those objectives could best be accomplished by an Equity Court is certainly legislation "reasonably framed and related to the subject of bankruptcy".

How much stronger is the right of Congress to provide the method; namely, by equity procedures, to determine a classical equitable remedy of reformation as it affects the competing interests of property in the possession of the Debtor, which is necessary for the contemplated reorganization?

"It must be observed that the bankruptcy court, which acts as a court of equity, ordinarily exercises exclusive control over all issues involved and that claims for debt or damages against bankrupt are ordinarily investigated by chancery methods wherein the principle is applied that the right to trial by jury considered as an absolute right does not extend to cases of equity jurisdiction." *Matter of Michigan Brewing Co., supra.*

If there is no constitutional right to a jury trial in this proceeding, *Diamond Door Co. v. Lane–Stanton Lumber Co.*, 505 F.2d 1199 (9th Cir. 1974), then has a new right been created by the Bankruptcy Act of 1978 in 28 U.S.C. § 1480? This section reads as follows:

"§ 1480. Jury Trials.

(a) Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury, in a case under title 11 or in a proceeding arising under title 11 or arising in or related to a case under title 11, that is provided by any statute in effect on September 30, 1979.

(b) The bankruptcy court may order the issues arising under section 303 of title 11 to be tried without a jury."

The language is hardly crystal clear but seems to speak not in terms of new rights but, rather, of retaining rights already recognized in three situations.

First, the continuation of any jury rights that previously existed in a case under Title 11. However, as previously indicated, there were no existing jury rights in Bankruptcy except as provided under the Dischargeability Act of 1970 found in 11 U.S.C. § 35(a)(5) and in the case of Involuntary disputed petitions, 11 U.S.C. § 42. The new code

expressly removed the latter right in the very section dealing with jury rights, 28 U.S.C. 1480(b). As for the dischargeability section, the Courts continued to deny jury trials based on the Bankruptcy Court's equity nature.[1] *Merrill v. Walter E. Heller & Co.*, 594 F.2d 1064 (5th Cir. 1979).

Secondly, the new Act seems to continue any jury trial right expressly granted as a remedy by any non–bankruptcy *statute* in effect on September 30, 1979. 28 U.S.C. 1480.

Thirdly, a jury right claimed in a non–bankruptcy court case that is removed to the Bankruptcy Court under 28 U.S.C. 1478 is preserved, see Interim Local Bankruptcy Rule 7004.

■ This interpretation of 28 U.S.C. 1480 as merely a continuation and not a creation of new rights finds support in the Congressional history wherein at page 448, the House Report No. 95–595, U.S. Code Cong. & Admin. News 1978, pp. 5787, 6403 referring to this section states:

"§ 1480. Jury Trials.

Subsection (a) continued any current right of litigants in bankruptcy cases, and cases related to bankruptcy cases, such as plenary actions, to a jury trial. The exception provided in subsection (b) is to the trial of issues arising on the trial of an involuntary bankruptcy petition."

■ I therefore conclude that this defendant does not have, as a matter of constitutional law, a right to have its dispute on reformation with Debtor concerning property necessary for its potential reorganization, determined by a jury. Nothing in 28 U.S.C. 1480 gives it that right since no such right previously existed in bankruptcy and there is no non–bankruptcy *statute* giving it that remedy. In fact, reformation has traditionally been a matter for the courts non–jury equitable jurisdiction. *Bay City Shovels, Inc. v. Schuler*, 245 F.2d 73 (6th Cir. 1957); *Wiltshire v. Warburton*, 59 F.2d 611 (4th Cir. 1932); *Live Stock State*

---

1. See Countryman, "The New Dischargeability Law", 45 Am.Bankr.L.J. at 34; Herzog, "The Case for Jury Trials or the Issue of Dischargeability", 46 Am.Bankr.L.J. 235.

*Bank v. Doyle*, 292 F. 465 (8th Cir. 1923); *Great Northern State Bank v. Ryan*, 292 F. 10 (8th Cir. 1923).

To the extent that the Court has the power to grant a jury trial, this is not an appropriate case to exercise that power. This defendant, along with the plaintiff, signed and submitted to the Court an agreement and request to have the trial continued from December 5 to December 17, knowing of need for an urgent resolution of this dispute. Discovery was expedited. The defendant waited until a day or two before the agreed trial date to make it's request for a jury trial without any previous notice to this Court, either at the December 5th pre–trial or any other time. Although counsel knew that to assemble a jury venire would require time and would necessitate a delay in the trial and therefor possibly frustrate the reorganization.[2] One of the essential aspects of bankruptcy is the expeditious disposition of disputes, *In Matter of Cartridge Television, Inc., supra,* and while that consideration is not paramount to due process when due process can be satisfied, counsel should not be encouraged to frustrate Congressional intent.

The trial should proceed as scheduled.

2. While it is true that F.R.C.P. 38 and Interim Local Rule 9001 talk in terms of 10 days after pleading which, in this case was the answer, Bankruptcy practice has been in keeping with Rule 115(b) to require a jury claim with the answer. Obviously, Rule 115(b) is no longer applicable but it indicates a well established practice and at least might be considered as it relates to the good faith of the defendant in his filing this last minute request when in the circumstances of this case some indication of a desire for a jury might easily have relayed to the court at an earlier date so that arrangements could have been made in time for this December 17th trial.