In re D. H. OVERMYER TELECASTING CO., INC., Debtor.

HADAR LEASING INTERNATIONAL CO., INC., et al, Plaintiffs,

v.

D. H. OVERMYER TELECASTING CO., INC., et al, Defendants.

Bankruptcy No. B81–00506.

Adv. No. B81–1005.

United States Bankruptcy Court, N. D. Ohio E. D.

Feb. 18, 1982.

John Silas Hopkins, III, and William S. Eggeling, Ropes & Gray, Boston, Mass., and Susan B. Collins, and Joseph Patchan, Baker & Hostetler, Cleveland, Ohio, for The First Nat. Bank of Boston.

William T. Smith, Calfee, Halter & Griswold and Harry W. Greenfield, Javitch, Eisen & Greenwald Co., L.P.A., Cleveland, Ohio, for Hadar Leasing Intern. Co. Inc.

James M. Wilsman, and Kevin T. Duffy, Parks, Eisele, Bates & Wilsman, Cleveland, Ohio, for D. H. Overmyer Telecasting Co., Inc.

Ronald A. Rispo, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, Ohio, for Daniel H. Overmyer.

David O. Simon, Dettelbach & Sicherman, Cleveland, Ohio, for Creditors' Committee of D. H. Overmyer Telecasting Co., Inc.

## MEMORANDUM OF OPINION DENYING DEMANDS FOR JURY TRIAL

JOHN F. RAY, Jr., Bankruptcy Judge.

This adversary proceeding was initiated on August 25, 1981, by plaintiff, Hadar Leasing International Co., Inc. ("Hadar"). Hadar filed a complaint against the defendant/debtor-in-possession, D. H. Overmyer Telecasting Co., Inc. ("Telecasting"). Hadar claims, *inter alia*, that it owns certain property and equipment in Telecasting's possession by virtue of a number of lease agreements, and that it is entitled to repossession. Thus, Hadar seeks the lifting of the automatic stay of proceedings against Telecasting, an order from this Court permitting repossession of the equipment and a judgment for lease payments alleged to be due and payable.

Thereafter, The First National Bank of Boston ("FNBB") intervened as a co-defendant with Telecasting under Section 1109(b) of the Bankruptcy Code and Bankruptcy Rule 724, which was its unconditional right as the sole shareholder of Telecasting. Both Telecasting and FNBB filed answers and counterclaims against the plaintiff, Hadar. Telecasting named Intermodal Systems Leasing, Inc. ("ISLI"), the predecessor of Hadar, as an additional defendant in its counterclaim. FNBB's counterclaims

assert that the lease agreements alleged in Hadar's complaint were elements of a broader scheme to defraud FNBB and other creditors of various corporations owned or controlled by Daniel H. Overmyer. None of the pleadings filed in this proceeding had, at this point, incorporated a demand for a jury trial.

The question addressed by this memorandum of opinion was first raised on November 24, 1981. At that time, Hadar filed further claims against FNBB and demanded a trial by jury on all issues so triable as of right. Daniel H. Overmyer and two related corporate entities, Overmyer Distribution Services, Inc. ("ODS") and D. H. Overmyer Co., Inc. (Ohio) ("DHO"), moved to intervene pursuant to Fed.R.Civ.P. 24 and Bankruptcy Rules 11–61 and 724. These intervenors appended to their motions replies to FNBB. The intervenors (and ISLI, in its subsequently filed pleadings) demanded jury trials on their claims. After an extensive conference in chambers, this Court granted the motions to intervene, but reserved decision on the question of whether any of these claims were to be tried before a jury. At the Court's direction, the parties have now briefed this issue.

The Bankruptcy Reform Act has not changed the fundamental equitable nature of bankruptcy proceedings. *See Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *Pepper v. Litton*, 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939). As courts of equity, bankruptcy courts have traditionally acted without juries. *In re G.S.F. Corp.*, 7 B.R. 807 (Bkrtcy, D.Mass.1980); *In re Lafayette Radio Electronics Corp.*, 7 B.R. 187 (Bkrtcy, E.D.N.Y.1980). The Overmyer plaintiffs contend, however, that they may intervene in a bankruptcy proceeding and demand a trial by jury on their claims, by virtue of the Bankruptcy Reform Act, 28 U.S.C. § 1480(a). This section provides:

"(a) Except as provided in subsection (b) of this section, this chapter and title 11 do not affect any right to trial by jury, in a case under title 11 or in a proceeding arising in or related to a case under title 11, that is provided by any statute in effect on September 30, 1979."

The Overmyer plaintiffs, however, have no right to trial by jury in the circumstances of this proceeding.

Section 1480 "do[es] not affect any right to trial by jury" that existed by virtue of some statute in effect on September 30, 1979. This section, therefore, directs that this Court determine whether, under the circumstances, the Overmyer plaintiffs would have been entitled on that date, *viz.* under the old Bankruptcy Act, to a jury trial on any claims presented. *In re Otis*, 13 B.R. 279, 280 (Bkrtcy.N.D.Ga.1981); *In re Mozer*, 10 B.R. 1002 (Bkrtcy.D.Colo.1981); *In re Hause*, 10 B.R. 628 (Bkrtcy.D.Mass. 1981); *In re G.S.F. Corp.*, 7 B.R. 807 (Bkrtcy.D.Mass.1980); *In re Lafayette Radio Electronics Corp.*, 7 B.R. 187 (Bkrtcy.E. D.N.Y.1980).

First, Hadar's claims against Telecasting directly involve property in the possession of the debtor in this proceeding, Telecasting. These claims would not have been tried to a jury under the old Act, *Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 481, 60 S.Ct. 628, 630, 84 L.Ed. 876 (1940), and, therefore, they implicate no right to trial by jury.

Second, the Overmyer intervenor/plaintiffs and ISLI would not have been entitled to a jury trial on their claims under the circumstances of this proceeding. Had the Overmyer plaintiffs voluntarily intervened in an equitable proceeding in a non-bankruptcy court prior to September 30, 1979, they would have been required to take the case as they found it and would have been deemed to have waived their right to a jury trial on their claims. *See Commonwealth of Pennsylvania ex rel. Feiling v. Sincavage*, 439 F.2d 1133 (3d Cir. 1971); 3B *Moore's Federal Practice*, ¶ 24.16[8].

Had the Overmyer intervenor/plaintiffs and ISLI voluntarily intervened in an adversary proceeding in bankruptcy under the old Act, this Court would have asserted summary jurisdiction over their claims for a number of reasons. The Overmyer claims

against FNBB are centrally connected to the eventual reorganization of two Chapter 11 debtors before this Court, Telecasting and Hadar. Indeed, Telecasting's Chapter 11 began in this Court with a request for injunctive relief prohibiting FNBB from foreclosing on its security interest in Telecasting's stock. Although this Court eventually refused to issue the requested injunction, the validity of FNBB's lien has been asserted to be a central issue in this proceeding from the beginning. Coupled with the fact that FNBB had become a party co-defendant with the debtor, Telecasting, the Overmyer plaintiffs' claims against FNBB can in no way be considered "collateral" to this reorganization. The resolution of the Overmyer plaintiffs' claims would have been considered to be necessary steps in both of the reorganizations currently pending before this Court. *In re Samoset Associates*, 654 F.2d 247, 252–254, 8 B.C.D. 245, 250–251 (1st Cir. 1981); *Baker & Taylor Drilling Co. v. Stafford*, 369 F.2d 551, 556 (9th Cir. 1966); *O'Dell v. United States*, 326 F.2d 451 (10th Cir. 1964). Consequently, the Overmyer plaintiffs would not have been entitled to a jury trial on their claims under the old Act, even if they had been brought involuntarily into this Court as defendants.

The fact is, however, that the Overmyer plaintiffs have voluntarily invoked this Court's jurisdiction to adjudicate their claims. The Overmyer intervenors could have intervened in this proceeding under the old Act [*See SEC v. United States Realty & Improvement Co.*, 310 U.S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940)]; and had they done so, they would have been deemed to have consented to this Court's summary, non-jury adjudication of their claims. *In re Axton*, 641 F.2d 1262, 1272 (9th Cir. 1981); *Page v. Arkansas Natural Gas Corp.*, 53 F.2d 27 (8th Cir. 1931), *aff'd*, 286 U.S. 269, 52 S.Ct. 507, 76 L.Ed. 1096 (1932); 2 Collier on Bankruptcy ¶ 23.08[5] at 551 (14th Ed.).

It makes no difference whether these claims were brought against Telecasting or against FNBB. FNBB has been made a co-defendant with Telecasting as a matter of right. The Overmyer plaintiff/intervenors were not compelled to bring their claims against FNBB in this equitable proceeding. To the extent that the plaintiff/intervenors may have had common law causes of action against FNBB, which could have been presented to a jury in some other forum, they have apparently chosen not to pursue them. In any event, they have no such right in this Court.

To the extent that this Court may have some discretion to afford the Overmyer plaintiffs a jury trial on their claims, it hereby declines to do so. The claims of all parties have been studied, and the Court has been extensively exposed to factual disputes in the course of the pre-trial supervision of the proceedings in this case. Trying the plaintiffs' claims to a jury will multiply the length and cost of this adjudication many times. Such protracted litigation would, in this case, seriously prejudice the reorganization of Telecasting. A jury trial of these claims is contrary to the principal purpose of the Bankruptcy Code: "Speed and efficiency in bankruptcy is ... essential, because delay only operates to devalue assets, hinder financial rehabilitation, and prevent exercise of rights." H.R.Rep.No. 595, 95th Cong., 1st Sess. 13 (1977), U.S. Code Cong. & Admin.News 1978, p. 5787, 5975.

It should also be noted that both debtors in this case, Telecasting and Hadar, filed for Chapter 11 protection while they were under the control of Daniel H. Overmyer or his associates.[1] By so invoking this Court's equitable jurisdiction, the Overmyer entities' present demands for trial by jury on their claims are unpersuasive.

The demands for trial by jury are, accordingly, denied.

---

1. Although the degree and legal significance of such control remains a matter for trial, it cannot be denied that David Raible, for example, served as an officer and director of Telecasting at the time of its filing, and was designated as the chief operating officer for Hadar at that same time. The other Hadar directors consist of Mr. Overmyer's daughter and son-in-law, while Mr. Overmyer and his wife served consecutively as Chairperson of the Board of Telecasting.